## EMPIRE *v.* DARLINGTON.

1. Pursuant to the provisions of an act of the General Assembly of Illinois, approved Feb. 28, 1867, and to the result of a popular election duly called, and held June 3, 1867, a township subscribed $50,000 to the capital stock of a railroad company, created under the laws of that State, and it issued its bonds in payment therefor. On Aug. 20, 1869, that company was consolidated with another in Indiana, the new company assuming another name, and, in harmony with the object of said act, providing for the construction of a continuous line of road from a point in Indiana to the initial point of the road in Illinois. An election held in the township, Oct. 12, 1869, for the purpose of ascertaining the sense of its people upon the proposition to subscribe, upon certain conditions, $25,000, for additional stock in aid of the construction and completion of the road of the consolidated company, resulted in favor of the subscription, which being made, bonds to that amount in the customary form, bearing date March 20, 1870, and signed by the supervisor and clerk, were issued in the name of the township and delivered to the company. Each contains a recital that it is issued under and by virtue of a law of the State of Illinois, approved Feb. 28, 1867, and in accordance with the vote of the electors of said township, at the special election held Oct. 12, 1869, in accordance with said act; and it pledges the faith of the township for the payment of the said principal sum and interest as aforesaid. The twelfth section of the act of Feb. 28, 1867, declares that "to further aid in the construction of said road by said company, any incorporated town or townships in counties acting under the township organization law, along the route of said road, may subscribe to the capital stock of said company in any sum, not exceeding $250,000." *Held,* 1. That the power of the township to subscribe to the capital stock of the company was not exhausted by the subscription first made after the election held

June 3, 1867. 2. That under said section the power of the township to subscribe was limited in amount only. 3. That the consolidation of the company was authorized by the general statute of Illinois of Feb. 28, 1854. 4. That the power of the township to make the additional subscription was, in its essence, a right and privilege conferred upon the company chartered by the act of 1867 which, under the act of 1854, passed to the consolidated company.

2. The court affirms its ruling in *Brooklyn* v. *Insurance Company* (99 U. S. 362), that a decree rendered in a county court in a suit against a railroad company and others, declaring that municipal bonds and coupons issued to the company are null and void, does not affect the holders of them who did not appear, and had only constructive notice of the suit.

ERROR to the Circuit Court of the United States for the Southern District of Illinois.

Under the provisions of an act of the legislature of Illinois, approved Feb. 28, 1867, and in conformity to the result of a popular election duly called, and held on the 3d of June, 1867, the township of Empire in McLean County, in that State, made a subscription of $50,000 to the capital stock of the Danville, Urbana, Bloomington, and Pekin Railroad Company, a corporation created under the laws of Illinois. That company had by its charter power to locate, construct, and complete a railroad from Pekin, through, or as near as practicable to, certain designated towns, to the eastern boundary of the State.

In payment of the subscription, bonds of the township, of like amount, were issued and delivered to the company.

On the twentieth day of August, 1869, that company consolidated with the Indianapolis, Crawfordsville, and Danville Railroad Company, an Indiana corporation, the consolidated company assuming the name of the Indianapolis, Bloomington, and Western Railway Company. The consolidated railroad formed a continuous line of road from Indianapolis, Ind., to Pekin, Ill.

On the 12th of October, 1869, an election was held in the township of Empire for the purpose of ascertaining the sense of its people upon the proposition to subscribe, upon certain conditions, the sum of $25,000, as additional stock in aid of the construction and completion of the Indianapolis, Bloomington, and Western Railroad. The election resulted in favor of the subscription, which being made, bonds to that amount

were issued in the name of the township and delivered to the company.

The bonds were in the customary form, dated March 20, 1870, and signed by the township supervisor and clerk. Each one contained a recital that it was issued " under and by virtue of a law of the State of Illinois, entitled ' An Act to amend the articles of association of the Danville, Urbana, Bloomington, and Pekin Railroad Company, and to extend the powers of and confer a charter upon the same,' approved Feb. 28, 1867, and in accordance with the vote of the electors of said township, at the special election held Oct. 12, 1869, in accordance with said act. And the faith of the township of Empire is hereby pledged for the payment of the said principal sum and interest as aforesaid."

Darlington, who is the holder of some of the bonds and coupons issued March 20, 1870, brought this action against the township to recover thereon. It was admitted in the court below that on April 29, 1878, the Circuit Court of McLean County, Illinois, upon the application of certain tax-payers of the said township, enjoined the further payment of the principal or interest, or any part of the bonds or coupons issued in payment of the said subscription of $25,000; that the bondholders were made parties to that suit by the name of unknown owners and holders; that they were notified of its pendency by publication only; and that subsequently a decree was rendered declaring said bonds and coupons void, and perpetually enjoining the assessment and collection of taxes for the purpose of paying them.

The defences set up by the township are stated in the opinion of the court.

A jury having been waived, the court below rendered a judgment in favor of the plaintiff for $8,178.05 and costs, whereupon the township sued out this writ of error.

*Mr. Lawrence Weldon* for the plaintiff in error.
*Mr. Shelby M. Cullom,* contra.

MR. JUSTICE HARLAN, after stating the facts, delivered the opinion of the court.

The present action involves the validity of the bonds and

the coupons thereto attached of the $25,000 issue, some of which are held by the defendant in error.

Their validity is assailed upon several grounds, each of which will be briefly examined.

It is contended that the election held on the 3d of June, 1867, under the charter of the Danville, Urbana, Bloomington, and Pekin Railroad Company, whereby the subscription of $50,000 was made and bonds issued in payment thereof, exhausted the power of the township under that charter, and that any additional subscription was without authority of law.

This position is clearly untenable. The twelfth section of the charter of the railroad company furnishes a conclusive answer to this proposition. That section declares that " to further aid in the construction of said road by said company, any incorporated town or townships in counties acting under the township organization law, along the route of said road, may subscribe to the capital stock of said company in any sum, not exceeding $250,000." That the plaintiff in error belongs to the class of townships described in that section, is not disputed. Its right, consequently, to make subscriptions, from time to time, until they reached the prescribed limit, seems to be too clear to require argument in its support. The charter contains no word, clause, or section indicating that the authority of the township to make subscriptions ceased after the first subscription. The legislature fixed a limit beyond which the township could not go in its subscriptions to the company in question, but left it free — the people consenting by popular vote — to make subscriptions in such sums and at such times as it deemed necessary or proper, within the aggregate amount named in the section which has been quoted. *People* v. *Town of Waynesville*, 88 Ill. 469.

The next proposition urged upon our attention is that by the consolidation to which we have referred a new corporation was created by the name of the Indianapolis, Bloomington, and Western Railway Company, and the original companies dissolved; that there was no power vested in the electors, the corporate authority of the township of Empire, under the charter of the Danville, Urbana, Bloomington, and Pekin Railroad

Company, to hold an election, to subscribe stock and issue bonds to that new company. This proposition is equally untenable with the first.

By a general statute of Illinois, passed Feb. 28, 1854, and in force as well at the date of the charter of the Danville, Urbana, Bloomington, and Pekin Railroad Company, as when it was consolidated with the Indianapolis, Crawfordsville, and Danville Railroad Company, express authority was conferred upon all railroad companies then organized or thereafter to be organized, which then had or might thereafter have their termini fixed by law, whenever their road or roads intersected by continuous lines, to " consolidate their property and stock with each other, and to consolidate with companies out of this [that] State, whenever their lines connect with the lines of such companies out of this [that] State." That statute further provided that the consolidated company, by the name agreed upon, should be a body corporate and politic, and " shall have all the powers, franchises, and immunities which the said respective companies shall have by virtue of their respective charters, before such consolidation passed, within the State of Illinois." Ill. Rev. Stat. Gross (3d ed.), pp. 537, 538.

It thus appears that whatever powers, franchises, and immunities were enjoyed by the Danville, Urbana, Bloomington, and Pekin Railroad Company, under its charter, passed, upon the consolidation, to the consolidated company. The power of the township of Empire to make, as we have held it could, an additional subscription, beyond the original of $50,000, was, in its essence, a right and privilege of the railroad company which, under the general law of the State, passed to the consolidated company. *County of Scotland* v. *Thomas*, 94 U. S. 682; *County of Henry* v. *Nicolay*, 95 id. 619. It was evidently so understood by the parties concerned; for while the bonds very properly refer to the act of Feb. 28, 1867 (which is the charter of the Danville, Urbana, Bloomington, and Pekin Railroad Company), as the statute which specifically authorized their issue, the petition of citizens asking an election, and the notice of the election of Oct. 12, 1869, distinctly show that the additional subscription of $25,000 to be voted on was for additional stock in aid of the construction and completion, not

of the Danville, Urbana, Bloomington, and Pekin Railroad, but "of the Indianapolis, Bloomington, and Western Railroad." If the popular vote had been, in terms, in favor of a subscription to the capital stock of the Danville, Urbana, Bloomington, and Pekin Railroad Company, and the subscription had been made in that form, there would be some reason to contend that the subscription would have been a nullity, since no such company then had a distinct separate existence. But when, as here, the vote was taken, and the subscription made, with direct reference to the construction and completion of the original line by the consolidated company, which had previously succeeded to all the powers, franchises, and immunities of the Danville, Urbana, Bloomington, and Pekin Railroad Company, there would seem to be no ground whatever to question the validity of the bonds issued and delivered to the company in payment of the subscription.

It is scarcely necessary to say that the decree in the Circuit Court of McLean County, Illinois, rendered in 1878, perpetually enjoining the assessment and collection of taxes for the purpose of paying the bonds and coupons in question, and declaring said bonds and coupons to be void, did not conclude the rights of the defendant in error. The bondholders were proceeded against by constructive service, as "unknown owners and holders." The defendant in error was not served with process, nor did he appear. If the decree was binding upon the citizens and courts of Illinois, as to which we express no opinion, it was ineffectual as to bondholders residing in other States, who were proceeded against only by constructive service. *Brooklyn* v. *Insurance Company*, 99 U. S. 362.

*Judgment affirmed.*