## THE STATE *v.* W. G. BIAS, ADMINISTRATOR ET AL.

1. REVENUE AGENT. *Term of office. Acts of April 15, 1876, and March 6, 1880, construed.*

   An act of the legislature, approved April 15, 1876, entitled "An Act to appoint an agent to investigate frauds and collect revenue due the State, counties and levee boards of the State," in the first section thereof, declared that there "shall be appointed by the Governor a revenue agent of the State of Mississippi, who shall continue in office for the term of four years, and shall have authority to collect and receipt for all amounts due the State, county or levee boards of the State in the following class of cases," enumerating them. The eleventh section of the act declared that the agent so appointed should not have authority to collect money shown by open account to be due the State, county or levee boards. The tenth section of the act provided, "that in case of the death, resignation or removal of said agent herein appointed, it shall be the duty of the Governor, by and with the advice and consent of the Senate, to appoint a successor to fill the unexpired term of the aforesaid agent." On the 6th of March, 1880, this act was substantially re-enacted. *Held,* that the provisons of the act of 1876, referred to, viewed in the light of the circumstances in which that statute was enacted (and which, besides being matter of public history, are suggested by the title of the act), indicate that it was the purpose of the legislature that the agent, to be appointed as therein provided, should hold his office for the term prescribed by the act, and that, at the expiration of that term, the office should terminate; but it is clear that such construction must be placed upon the act of 1880, since the legislative construction of the original act and the intent as to the act of 1880 are made apparent by the re-enactment of the act of 1876.

2. SAME. *Expiration of term of office   Recovery by ex-agent.   Effect as to new suit.*

   The act of 1880, above referred to, having expired by limitation, there was no such office as that of revenue agent for the State in March, 1886, and there could not be either a *de jure* or a *de facto* incumbent thereof; and a recovery in a suit instituted at that time by him whose term in such office had expired, was not a recovery by the State, and is no bar to a new suit by the State.

APPEAL from the Circuit Court of Union County.

HON. W. S. FEATHERSTON, Judge.

The case is stated in the opinion of the Court.

*T. M. Miller*, Attorney-General, for the appellant.

I maintain that the suit which the auditor caused to be instituted upon the bond for moneys due on final settlement on the face of the assessment rolls could not be concluded by the action brought by the State's revenue agent to recover moneys collected by the sheriff and fraudulently concealed.  By the act creating the office of revenue agent I take it that it was the purpose of the Legislature to have an expert with power to detect frauds and to recover money fraudulently concealed and withheld, and not otherwise to interfere with the general duties of the State's fiscal agent.  I think a close analysis of the act of 1880 (Acts 1880, pp. 94 and 95) will disclose the correctness of this position.  That being true, the revenue agent had no power to sue for such demands, and thereby to conclude the regular action of the auditor.  Certainly he was under no duty to hunt up an indebtedness by the auditor shown to be due, and was under no duty to sue for it.  That was the auditor's affair. Hence the principle of estoppel involved in the plea of *res judicata* ought to have no application, viz. : That one party should not be permitted to harrass another by separate actions when one is sufficient for all purposes.  Inasmuch as the exhibits were part of the declaration, and it there appeared that the claim was not of the character the revenue agent was charged with the duty of looking after, the plea itself was bad, and the demurrer should have been extended back to it.  Wherefore I submit the judgment should be reversed.

The Attorney-General argued the case orally.

*Z. M. Stephens* and *Strickland & Bates*, for the appellees.

1. We do not admit that there was no such officer as revenue agent when the suit in which the former recovery was had was instituted; but, be that as it may, still the judgement of the court below in this case should be affirmed.

*The State of Mississippi was the plaintiff* in said former suit, and Adams was *not* the plaintiff.  Indeed, Adams was no party at all to the suit.  The State of Mississippi is competent to sue in her own name, without suing " by " any official; and the allegation in the replication that the former suit was brought

by Adams as revenue agent and Dalton as attorney for the State of Mississippi is an averment that the State was the *real party*.

An infant sues by its next friend, but the infant is the *real party*, and the next friend may be displaced at any time by the court and another appointed in his place and the suit progress as before.

This court has decided that in a *qui tam* action brought by the State on a liquor bond, the *informer* is not a party to the suit and cannot be made liable for costs. The *State ex rel. Chandler* v. *J. W. Albrecht et al.*, (MS. opinion).

In the former suit, the State of Mississippi has sued and recovered a judgment, and that judgment is valid and binding, although Adams may not be *de jure* the State's revenue agent.

2. If this court shall hold that the interposition of a State official was necessary to enable the State to institute and prosecute the former suit, then we hold that Adams was at least a *de facto* revenue agent of the State, performing the functions of said office or position under claim and color of title, and his official acts are valid and binding upon the State and upon all persons whose rights have been affected thereby.

*C. L. Bates*, of counsel for the appellees, argued the case orally.

Cooper, J., delivered the opinion of the Court.

This is a suit brought by the state against J. M. Thompson, late sheriff and tax collector of Union County, and the sureties upon his bond as such collector to recover certain sums of money received by said Thompson as tax collector which have not been paid over by him to the proper officers as required by law.

The defendants pleaded a former recovery on the same cause of action in a suit instituted on the —— day March, 1886. To this plea the state interposed a replication setting up in an obscure, prolix and indefinite manner various matters ; whether it was intended by the pleader to traverse the facts of the plea or to confess and avoid them we cannot determine. The replication seems to challenge the conclusiveness of the former judgment by averring that the suit in which it was recovered

was brought by one Wirt Adams, revenue agent for the state, who sued for a different default than that named in the present action ; and who had no authority to sue for the sums sought to be here recovered, and who sued only some of the parties defendant in this action ; and (possibly) that the bond here sued on was not the one involved in the former suit.

A demurrer to this replication was interposed by the defendants, and it having been sustained, the plaintiff declined to plead further ; whereupon judgment final was rendered in favor of the defendants, and from that judgment this appeal is taken.

The pleadings disclose the fact that the breaches of the condition of the bond set out in the declaration existed at the time of the institution of the suit by Adams, revenue agent, and it is manifest that the court below sustained the demurrer upon the ground that the state could have but one recovery upon the bond, and that the judgment recovered by Adams was a recovery by the state. *State* v. *Morrison et al.*, 60 Miss., 74.

We deal with the case as it was dealt with in the court below, as presenting the single question whether the state is precluded of her present action, because in a suit brought in March, 1886, on the same bond here sued on by Adams, revenue agent, a judgment was recovered for a portion of the delinquency then existing in the accounts of the tax collector. We think the state is not affected by the first suit for the reason that at the time named, March, 1886, there was no such office as that of revenue agent of the state, and therefore that the suit by Adams was not a suit by the state, and the judgment recovered by him was not a judgment by the state.

The circumstances and conditions that gave rise to the act of April 15, 1886, entitled " An act to appoint an agent to investigate frauds and collect revenue due the state, counties and levee boards of the state " are somewhat disclosed by the title of the act itself, and are matters of public history.

The act declared that there " shall be appointed by the Governor a revenue agent of the State of Mississipi, who shall continue in office for the term of four years, and shall have authority to collect and receipt for all amounts due the state, county or levee boards of the state in the following classes

·of cases," enumerating many cases.   By section 11 it was
·declared that the agent so appointed should not have author-
ity to collect money due the state, county, or levee boards,
and shown by ·open account to be due; thus indicating that it
was against concealed and furtive frauds that the act was aimed.
By the 10th section of the act it was provided, " That in case of
the death, resignation, or removal of said agent herein appointed,
it shall be the duty of the Governor, by and with the advice and
consent of the senate, to appoint a successor to fill the unexpired
term of the aforesaid agent."   The circumstances under which
the act was passed were of a character not likely to again exist ;
duties to be performed had reference principally to concealed
frauds, and the revenue agent was excluded from the right of
collecting any sums where the same appeared to be due accord-
ing to the fiscal system of accounting between the permanent
officers charged with the collection and disbursment of the pub-
lic revenue; the term of the officer was to be for four years
·(within which time it was supposed the work he was appointed
to perform would be concluded), and in the event a vacancy
should occur " by death, resignation or removal," a successor was
to be appointed to hold office only for the unexpired term and
not for a new term of four years.   All these considerations
strongly suggest that it was not within the legislative purpose
to create a permanent office, but to appoint a fiscal agent for the
state to perform the duties therein prescribed for a definite time
and then that the employment, and with it the office should  ter-
minate.   We should feel strongly impelled to this conclusion if
no other action had been taken by the legislature indicating its
·construction of the scheme ; but the act of March 6th, 1880,
unmistakeably indicates the legislative purpose and understand-
ing.   On that day an act was passed, called an Amendatory Act,
but with the exception of a few changes and modifications of
the original, it is the original itself..   It begins by providing, as
did the act of 1876, that a revenue agent for the state should be
appointed, and the first section is a literal transcript of the first
section of the first act.   If a permanent office had been created
by the act of 1876, it would have been an act of supererogation
to re-create it by a new act of legislation, and the act of 1880

would have been in the form of a simple amendment to that of 1876, modifying and changing it according to the legislative will. But if the former act would expire by its own limitation within a short time, it was but natural that the form of the act should assume the form of a new direction to the Governor to appoint a new agent for new term of service.

We are not considering what construction the legislature in 1880 put upon the act of 1876 with the view of following its construction of that act, but we look at it for determining what the legislature of 1880 meant by its own act. By re-enacting that of 1876 it indicated its construction that otherwise the act would have expired by limitation, and we must assume that it intended the same construction to be put upon its own act.

The conclusion, therefore, is that the act of 1880 had expired by limitation before the institution of the suit by Adams; that there was not at that time any such office as that of revenue agent, and *per* consequence there could not be a *de jure* or *de facto* incumbent; that assuming to act as such did not invest Mr. Adams with the official authority to represent the state, and that a recovery by him was not a recovery by the state; wherefore, the present action is maintainable. It is but justice to Mr. Adams, by whom the former suit was prosecuted, to say that his right to sue as agent of the state has not been controverted; we doubt not he has acted in the utmost good faith in continuing in the performance of what he thought was official duty.

*The judgment must be reversed and the demurrer to the replication overruled.*