## STATE EX REL. ETC. *v.* JACOB ADLER.

1. CONSTITUTIONAL LAW. *Taxation. Assessment.*
    Under section 20, article 12, of the constitution of this state, which declares that "all property shall be taxed in proportion to its value, to be ascertained as directed by law," assessment in the manner provided by law is a prerequisite to such taxation.

2. SAME. *Assessment. Delinquency.*
    Except in cases of local assessments as ordinarily understood, there can never be any taxes *due* the state, counties or municipalities, unless based on a valid assessment of persons or property. Therefore, one whose property has escaped assessment, although by his own failure to return it for assessment, cannot be said to owe the state as a delinquent tax-payer the taxes which ought to have been assessed.

3. REVENUE AGENT. *Authority under act of* 1890. *Suit for taxes. Assessment.*
    The act of 1890 (Laws, p. 25), creating the office of state revenue agent and defining his powers, only authorized him to collect taxes already assessed and delinquent   It confers no authority on him to assess property, or to do anything by which a delinquency can be created where none already exists.

4. RETAILING. *Privilege tax. Failure to pay license. Action therefor.*
    Neither the provisions of chapter 39, code 1880, in relation to the sale of liquors, nor any other code provision, nor any subsequent statute prior to that of February 22, 1890, makes one who has unlawfully carried on the business of retailing, without paying the required privilege tax, liable to a suit in behalf of the state for the price fixed by the local authorities for license.

5. RETAILING WITHOUT LICENSE. *Penalty therefor. Civil suit.*
    One who, prior to the said act of 1890, was engaged in retailing intoxicating liquors without obtaining license, although a violator of law and liable to punishment, did not thereby become a delinquent tax-payer, in the sense that an action could be maintained by the state revenue agent to recover the privilege license that he should have paid.

6. SAME. *Failure to pay license. Revenue act of* 1890; *not retroactive.*
    Section 2, revenue act 1890 (Laws, p. 11), authorizing tax collectors to collect from one who has engaged in retailing intoxicating liquors without paying the required license, the amount he should have paid therefor, is not retroactive in its effects.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

The case is fully stated in the opinion.

*Calhoon & Green,* for appellant.

1. The act of 1890 authorized the revenue agent to sue for delinquent revenue. The evil to be remedied was the then existing delinquent revenue which could not be collected by reason of the time having passed for the use of the special remedies provided by law. The statute covers delinquencies prior as well as subsequent thereto. The method for collecting taxes is entirely discretionary with the legislature. In the absence of any provision for additional remedies, that by distress and sale is exclusive. If the statute creating the tax is silent as to the remedy, suit will lie. *Piazza* v. *State,* 66 Miss. 426.

The act of 1890 added to the existing remedy the right in the revenue agent to bring suit for delinquent revenue. Under this statute the same remedy now lies for the collection by suit of the license due under § 1109, code 1880, as was given by § 594 in other cases. This is a case of a remedy created where the obligation precedently existed. The obligation to pay the license was personal. "The applicant for license must pay the collector the taxes," etc. Code 1880, § 1104.

If the legislature in the beginning could have authorized suit, there is no reason why it may not do so afterwards. The legislature has entire control of remedies. *Vaughn* v. *Swazye,* 56 Miss. 704.

It is fully within the power of the legislature by retroactive legislation to cure irregularities in regard to the levy and collection of taxes. Cooley on Con. Lim. 371, 709.

The act of 1890 giving a right of action is remedial, and will be retrospectively construed so as to cure the evil.

2. If the case requires discussion of the right to collect delinquent revenue upon property which has escaped taxation, we say: (1) there is no necessity for any particular form of assessment either for current or delinquent revenue. *Vaughn* v. *Swazie, supra.* The method in use for assessments is one provided by legislation. There can be no difference in principle between the methods heretofore adopted in subjecting property which has escaped taxation and that prescribed by this revenue act. The legislature has the power

to confer the right to assess property on one who is not the constitutional assessor where he is in default. *Wolfe* v. *Murphy*, 60 Miss. 1. (2) The legislature has the power to adopt a system for collecting delinquent revenue different from that in use for collecting current revenue, and has done so in the code. If the power exists to provide a special remedy, it is immaterial whether the remedy is created before or after delinquency. The delinquent cannot complain.

*J. M. Gibson*, on the same side,

Filed a lengthy brief, in which he reviewed at length the several sections of the act of 1890 in connection with the code provisions, seeking to show that the right of action in this case had been conferred upon the revenue agent, and in addition making the following points :—

1. Under the code the liability of the retailer in a case like this is fixed, but there is clearly a *casus omissus* as to the remedy. By § 1109 it is provided that the sheriff shall assess and collect the taxes, but as to the method of assessing and collecting the code is silent. But there was no constitutional obstacle in the way of supplying this omission afterwards, and this was done by the act of 1890.

2. There is no inhibition in our constitution against retrospective laws. Where a moral obligation to pay exists, the legislature can give legal effect by a retroactive statute. Wade on Retroactive Laws, § 2421; *Chaffe* v. *Aaron*, 62 Miss. 29; 95 U. S. 644; 15 Pa. St. 166; 21 Fed. Rep. 97; 1 Tex. 250; Cooley on Con. Lim. 371.

It is no objection to the existence of this remedy for the debt that punishment is in addition inflicted upon the unlawful retailer. One may be guilty of a crime and yet be under civil liability to the person injured by the crime. So one voluntarily engaged in a business on which the law imposes a license, and who does not pay the tax, cannot plead his own wrong.

*Blackwell, McLaurin & McLaurin*, on the same side.

*Henry & Thompson,* for appellee.

The act of 1890 cannot have a retrospective operation. The legislature may vary remedies, cure irregularities and defects, and validate imperfect contracts, etc. But it cannot by retroactive statutes impair contracts or disturb vested rights. 10 S. & M. 100; 50 N. H. 50; 20 Blatch. 341; 26 Pa. St. 432; 61 Ib. 327. Nor create a liability where none before existed. Cooley on Con. Lim. 369; 16 Mass. 215; 43 N. Y. 130; 18 N. H. 547.

The act of 1890 cannot be given the operation contended for by appellant without varying the effect of a past transaction. It cannot create a demand against one not before that bound.

No civil liability rested upon appellee to pay the privilege license. *State* v. *Piazza,* 66 Miss. 426.

If the obligation to pay the privilege tax was a civil liability or debt, then the punishment, fine and imprisonment, imposed by sections 1109 and 1112 of the code would be unconstitutional as being imprisonment for debt. But convictions in such cases have been repeatedly sustained, because the taxes are not debts. Taxes do not rest upon contract, but operate *in invitum.* If they were debts, their recovery by imprisonment would be unconstitutional. Cooley on Taxation, 18; 5 Gray, 530; 6 T. B. Mon. 641; 16 S. C. 47; 53 Ala. 511.

The act of 1890 creating the office of state revenue agent, and the revenue act of that year, although passed at different dates, are to be construed as *in pari materia.* When this is done the conclusion must be reached that the liability created by the later act was prospective only. The plainest declaration is necessary to give any statute a retroactive effect. *McIntyre* v. *Ingraham,* 35 Miss. 25; *Brown* v. *Wilcox,* 14 S. & M. 127; *Garrett* v. *Beaumont,* 24 Miss. 377.

It is true, as claimed for appellant, that a criminal act may cause a civil liability to arise also, but in such case the right of the plaintiff and of the state are different, based on distinct considerations. Here the civil and the criminal liability are both in favor of the state, and if both prevail, must subject the citizen to a double penalty

COOPER, J., delivered the opinion of the court.

This suit is brought by the revenue agent of the state to recover from the appellee the sum of four hundred dollars, as the license fees due by him to the state for conducting the business of retailing intoxicating liquors during the years 1888 and 1889—two hundred dollars for each year.

The declaration alleges that during the said years the defendant exercised the privilege of carrying on the business of a retailer of vinous and spirituous liquors in less quantities than one gallon in the 5th supervisor's district of Warren county, without having first obtained a license so to do or paying the price thereof as required by law, the same having been before and during that time fixed by law at $200 per annum, wherefore, etc. The defendant demurred to the declaration, assigning many causes of demurrer; but, for the purpose of this examination, the grounds of demurrer may be sufficiently stated as resting upon the objection that the facts alleged do not show that any debt, duty or obligation to the state existed, for which the revenue agent was authorized by law to sue.

The demurrer was sustained, and the suit dismissed, and from that judgment the state prosecutes this appeal.

The right of the plaintiff to maintain this suit exists, if at all, under the provisions of the act entitled, "An act to provide for the collection of delinquent revenue in this state, and for other purposes," approved February 22, 1890. Laws, p. 25.

By the first section of the act, the office of revenue agent is created and his appointment and qualification provided for. By the remaining sections other than the second and third, the duty of the agent to notify the proper law officers of embezzlements discovered by him, and to appear as a witness in prosecutions therefor, the time at which and the persons to whom reports of his collections and settlements are to be made, directions as to representing the state in execution sales of lands, sold under judgments by him recovered, the compensation to be by him received, and other matters not now necessary to be stated, are declared and provided for.

The second and third sections of the act upon the construction of which the solution of the question presented by this appeal

depends, are as follows : " Section 2. It shall be the duty of said agent when he shall have reason to believe from information or otherwise, that there is or has been any delinquency on the part of any of the fiscal officers of the state, counties, or levee boards, or municipalities in collecting or paying over the revenues due by law to the same, to investigate the books, papers, and evidence pertaining thereto, and to inquire diligently into the same ; and if it shall appear that for any reason there has been a failure to enforce the law, and to collect all revenue due, or if there has been a failure to account for, or pay over the amounts collected, said agent is directed and empowered to bring, or cause to be brought, all proper actions at law, or in equity, as the case may be, in his own name as revenue agent, or in the name of the state of Mississippi, or other body politic or corporate to which the same may be due, to recover or enforce the same against the officer on his bond, or any person, (or) corporation owing or properly chargeable with the same. That all such actions at law shall have precedence over all other pending suits, and shall be triable at the return term of the writ, unless the defendant or defendants shall set forth in writing his or their defense and reasons for continuance under oath, when the court, if justice requires it, may continue the same to the next term. That the provisions of chapter 46, acts of 1888, except as modified hereby, are hereby declared to be parts of this act."  .  .  .  .

" Section 3. That said agent, besides the authority conferred by the second section of this act, shall have special power and authority in the manner and upon the terms therein prescribed, to collect, receipt or sue for, as the case may be, all revenues or debts due, or hereafter to become due, when delinquent to the state, counties, levee boards, or municipalities in this state, from officers, persons or corporations on property liable for the same ; in all cases where any funds have been collected by any fiscal officer of the state, county, levee board or municipality, and have not been paid over to the proper parties entitled to receive the same, if such indebtedness does not appear by correct open account on the books of the state, county, levee board or municipality ; and if it does so appear, if, after due notice in writing by the auditor for the state, the chan-

cery clerk for the county, the clerk or secretary for the board or
municipality for their corporations, for thirty days, to the person
or persons liable therefor, the delinquency is not paid up, then it
shall be the duty of such officer so given (giving?) notice to notify
such agent of such delinquency, and he shall thereupon proceed to
collect the same. In all cases where such fiscal officer has collected
or received public money or funds, and has not paid over or ac-
counted for same; in all cases where tax collectors of the state,
counties or levee boards or municipalities have failed to collect, or
have collected and failed to pay over taxes due, whether general,
special, poll or privilege; or where, as such tax collectors, funds
have been collected as taxes due when none were due; or where they,
in any other manner, have unlawfully exacted taxes as due; or
where they have collected taxes not charged to them, and have not
accounted for and paid over the same; or where such tax collectors
or other fiscal officers of the state, counties, levee boards or muni-
cipalities have received unlawful or improper credits in their settle-
ments as such; or where any of such tax collectors or fiscal officers
have by virtue of their office collected or received public funds,
and have not accounted for and paid over the same to the proper
parties entitled to receive the same; in all cases where there has
been a failure to collect fines or forfeitures or licenses, or any other
tax whatsoever, whether privilege, poll, general or special, or any
other indebtedness due to the state, county, levee boards or muni-
cipalities by any person, corporation or property, and in all cases,
generally, where there is public revenue of any kind whatsoever
due, under any law of this state, which is delinquent, and which
has for any reason escaped collection."

The questions involved are two : *First.* What debts or demands
due to the state, levee boards, counties or municipalities are under
the act quoted collectible by the revenue agent? *Second.* Under
the facts stated in the declaration, does the defendant owe the state
a debt so collectible by such agent?

The revenues of the state, aside from the proceeds of sales of its
lands, are derived under its general laws either from taxation of
persons, property or privileges; from fines, forfeitures and penalties,

or from the proceeds of escheated estates. To these may be added, under the 3d section of the act above quoted, such sums as may have been or may be collected by the tax collector from the tax-payer as taxes, when in fact they were not due. But, for the pur-poses of this investigation, we need not concern ourselves with this class of collections, and hence dismiss it from consideration.

The present litigation being between the revenue agent as the representative of the state alone, and the defendant, we shall con-sider the subject in the light of the state's relation only, and, to exclude any possible misapplication of our language to circum-stances to which it should not be applied, we note here the fact that our remarks upon the assessment of property as a prerequisite to the imposition of taxes have no application to cases of local assessments as ordinarily understood, or to the imposition of taxes in the levee districts for levee purposes. Aside from these, we know of no instances in which a tax upon persons or property is due the state, counties, or municipalities, unless the property or person is first entered upon the rolls as provided and required by law.

The constitution provides for *ad valorem* taxation of property by the 20th section of art. 12, which declares that " all property shall be taxed in proportion to its value, to be ascertained as directed by law."

In accordance with this constitutional requirement, a plan for the assessment and valuation of all taxable property is provided by law.

All property subject to taxation is entered by the assessor upon the rolls which are then examined, corrected and approved by the county authorities. Any property discovered by the assessor as un-listed prior to the final action of the board of supervisors, may be by him added to the roll. Code, § 509. And, after the roll has passed into the hands of the collector, he is required to assess and collect taxes upon all persons and property left unassessed by the assessor, and to report his action in the premises to the board of supervisors at the succeeding March meeting of that body. Code, § 513. When it is discovered that any person or property has

escaped taxation in former years, it is made the duty of the assessor
to assess such person or property, "distinctly specifying the fact of
such escape and discovery by him, on a page or pages of his assess-
ment roll separate from the assessment of the current years," and
he is required to "give notice in writing to the person assessed
or whose property is assessed, if such person is a resident of the
county." Code, §§ 486, 487.

It is thus seen that careful and minute provision is made by law
for the assessment of all property and persons subject to taxation,
and if any omission occurs it may be corrected by the assessor at
any time before final action by the board of supervisors, and if
still omitted the collector may add such person or property while
the roll remains in his hands; and if such person or property is
not discovered until a subsequent year, he or it may be then assessed
and the tax imposed whenever the discovery of the omission is
made. But throughout the whole scheme, the provision is promi-
nent of an assessment by the executive officer, and control and
review of this action by the board of supervisors, where the tax-
payer may be heard.

The contention of counsel, that because, under § 513 of the code,
the tax-collector may add persons and property escaping assessment
and taxation to the rolls, and collect the taxes assessed by him, the
revenue agent, who is also made tax-collector, may perform the same
functions, is answered by the simple reply that the law expressly
confers such authority on the tax-collector, without which he could
not perform the act, and does not confer it upon the revenue agent.
The tax-collector is by § 513 of the code made *pro hac vice* assessor,
and his act as such creates the assessment under which the tax arises,
which, as collector, he collects. The revenue agent is a pure col-
lector, authorized only to collect taxes already assessed and delin-
quent, and having no authority to create the delinquency for which
he may sue.

The clause of the act under which the power is claimed to exist
is that which confers the power of collection "in all cases where
there has been a failure to collect fines, or forfeitures, or licenses, or
any other tax whatsoever, whether privilege, poll, general, or special,

or any other indebtedness due the state, county, levee boards, or municipalities, by any person, corporation, or property, and in all cases generally where there is public revenue of any kind whatsoever due under any law of the state, which is delinquent and which for any reasons has escaped collection."

The argument for appellant is that one who has failed to return his property for assessment owes the state as a delinquent tax-payer the tax which would have been assessed against it if returned, and, followed to its logical conclusion, would embrace the right of the revenue agent to sue for a fine which one guilty of assault and battery ought, under the law, to be required to pay upon conviction of the offense, for taxes upon unassessed property are no more due and delinquent than is the unimposed fine of the actually guilty but unconvicted violator of the criminal law. It would be unprofitable to consider the question of legislative power to enact a law such as the appellant contends the one under investigation to be. We find nothing in the one actually enacted except machinery for the enforcement of pre-existing legal rights against delinquents, and of this no one can question the validity.

Having thus defined the limits of the authority conferred by law upon the revenue agent, it remains only to determine whether, on the facts stated, the defendant is delinquent to the state for any tax, general, special, or privilege. As we have seen, the agent has no power to sue for a tax upon property or persons, unless the same has been levied upon an assessment of the property or thing by competent authority. There is no pretense of any assessment, and the delinquency, if any, must be by means of the defendant's failure to pay a privilege tax imposed by law.

Privilege and license taxes are under the law of two classes: *First.* Those imposed by law upon callings of a lawful or permissible character, and which are imposed solely for revenue, the business being rendered unlawful only by reason of the non-payment of the privilege tax imposed. *Second.* Those imposed upon retailers of intoxicating liquors, who cannot derive authority to conduct it by the mere payment of the license imposed, but who must do other acts to secure the privilege of conducting the business.

By § 585 of the code a tax on privileges is levied upon certain callings, upon the payment of which the business may be lawfully conducted, but failure to pay which tax subjects the party taxed to certain penalties provided. These taxes are graded according to the extent of the business conducted, the capital invested, the population of the towns in which the business is pursued, etc. etc.

For the purpose of fixing the amount of tax to be paid, it is provided that " the tax collector shall require every applicant for a license to carry on business on which is imposed a privilege tax in proportion to the capital stock, stock of merchandise or other variable circumstance, to make affidavit of the basis on which he seeks such license, which affidavit shall be carefully preserved by such collector for the use of the grand jury." Code, § 596.

It is further provided by § 594 that, " Any one failing to pay the privilege tax herein imposed, and to obtain license as herein required, but pursuing the business taxed without such license, may be proceeded against by suit for such tax, besides being dealt with criminally as herein provided, and the tax collector may assess such tax and seize and sell any property liable for such tax, in the same manner as he may distrain and sell property of other delinquents."

By § 1109 of the code, it is also provided that, " Merchants and others, carrying on any business or trade, who may sell or give away liquors, either vinous or spirituous, at their places of business in less quantities than one gallon, for any purpose whatsoever, shall be subject to pay the regular retail tax, fixed by the county or corporate authorities of the place where such business is conducted, and it shall be the duty of the sheriff to assess and collect such tax, whenever he is informed that such sales or gifts have been made, and such persons, on conviction, shall be fined in a sum not exceeding one hundred dollars."

By § 1097 it is made unlawful for any person to sell any vinous or spirituous liquor in less quantity than one gallon, without having first obtained a license in the manner directed by other sections of the chapter of which that section forms a part.

By such other sections it is provided that one desiring to follow

the business of retailing shall petition the local authorities for a
license so to do. In addition to this, he must present to such
authorities a petition signed by a majority of the legal voters of
the supervisor's district, or of the city or town in which the busi-
ness is to be conducted, certifying to the good character of the
petitioner and recommending the grant of the license; he must
then, if the license be granted, enter into bond in the penalty of
two thousand dollars, conditioned to do and not to do many things
enjoined by law upon a retailer, and must pay to the proper officer
the sum fixed by such authorities as the price of the privilege of
retailing. All this being done, he may lawfully carry on the busi-
ness of retailing. Punishment by fine and imprisonment is de-
nounced against any one who shall sell such liquors without having
first secured such license; but there is no declaration in the code
that a person conducting the business of a retailer without license
shall be liable to pay the price fixed by the local authorities for
license.

We have given, with perhaps unnecessary detail, those provisions
of law existing at the time the business was conducted by the de-
fendant, as set out in the declaration, which are appealed to by the
appellant as authorizing the present suit. They are the only ones
known to us from which a liability to the action could be supposed
to flow.

Manifestly the provisions of the chapter against retailing does
not impose the supposed subjection to this suit. Section 1109 does
not apply, for the reason that it is directed to a specific class of
cases, viz., merchants and others carrying on some business other
than that of retailers, who at such places sell or give away intoxi-
cating liquors.

Unlawful selling of such liquors under all other circumstances
is covered by other sections of the chapter, and save under the cir-
cumstances named in this section, it is not unlawful to *give away*
such liquors in any quantity. Section 585 does not apply, for by
it no privilege tax is levied upon the retailer.

As we have said, there are no other provisions of law by which
liability to pay the amount which would have secured the legal

right of retailing is fixed upon one who does retail without securing the license.

We find nothing in any of the provisions of law fixing upon the unlawful retailer the character of a *delinquent tax-payer.* He is a violator of law, and as such is liable to fine and imprisonment for his offense; but the offense is not that he has failed to pay a sum as taxes on the business transacted, nor even that he has conducted the business without payment of the license tax. Payment of the sum fixed as the price of the license would not, of itself, have legalized the business. Compliance with all the other numerous provisions of the statute would be required to render it legal. Nor was it necessary that the defendant should have continuously conducted the business of a retailer to bring him within the condemnation of the statute against retailing: a single sale was sufficient for that, and each sale so made was a distinct and separate offense, for which the whole penalty of the law might have been inflicted. The facts set out in the declaration, if true, show the defendant to have been continuously violating the law for years, but they do not show that under the law he became debtor to the state in any sum whatever.

It is only necessary to add that by the second section of the revenue act of 1890 (Acts, page 11), the law is made for the future what appellant contends it has been in the past; but this act is so clearly prospective in its character that any observations in reference to past transactions are unnecessary.

*The judgment is affirmed.*