GEORGE COUNTY BRIDGE Co. v. CATLETT, Sheriff and Tax Collector.

(In Banc. June 8, 1931.)

[135 So. 217. No. 29255.]

Engle & Laub, of Natchez, T. H. Byrd, of Lucedale, and L. C. Hallam and G. G. Lyell, both of Jackson, for appellant.

**O. F. Moss,** of Lucedale, for appellee.

Argued orally by **G. G. Lyell**, for appellant.

**Anderson, J.**, delivered the opinion of the court.

The appellee, in his official capacity as sheriff and tax collector of George county, brought this action against the appellant in the circuit court of that county to recover the sum of two thousand eight hundred five dollars alleged to be taxes due by the appellant to the state, George county, and the various taxing districts of the county, for the year 1929. The appellant, although personally served with summons, failed to appear and make any defense to the suit. At the return term of the court, there was a judgment by default and a final judgment on proof in favor of the appellee for the amount sued for, from which judgment the appellant prosecutes this appeal.

The appellant asks a reversal of the judgment upon two grounds: First, that the appellee was without authority of law to bring the action; and, second, that, if mistaken in that position, our statute making taxes a debt for which suit may be brought is violative of the due process provision of both the State and Federal Constitutions, and is therefore void. Constitution

United States, Amendment 14, section 1; Constitution Mississippi 1890, section 14.

There were attached to appellee's declaration, as exhibits thereto, a copy of the assessment roll for the year 1929 covering the appellant's property, the taxes on which were sued for, a copy of the final order of the board of supervisors, approving the assessment roll, and copies of all of the proceedings leading up to the final approving order, including proof of publication to the taxpayers of the county of the equalization meeting of the board of supervisors at which they were required to appear and make protests against their assessments, if dissatisfied therewith.

The assessment of the appellant's property was regular and legal in every respect. In fact, its legality is not challenged by the appellant.

The statute under which this action was brought is section 3122, Code of 1930, which has appeared in all our Codes, substantially in its present form, back to and including the Code of 1892, and reads as follows: ''Every lawful tax assessed, levied or imposed by the state, or by a county, municipality, or levee board, whether ad valorem, privilege, excise, income, or inheritance, is a debt due by the person or corporation owning the property or carrying on the business or profession upon which the tax is levied or imposed, whether properly assessed or not, or by the person liable for the income, inheritance or excise tax, and may be recovered by action; and in all actions for the recovery of ad valorem taxes the assessment roll shall only be prima-facie correct.''

It is unnecessary to decide whether or not the appellee was authorized to bring this suit, because we have reached the conclusion that this question cannot be raised for the first time on appeal.

In 3 C. J., pages 762, 763, paragraphs 667 to 670, the general rule is stated substantially as follows: That an

objection that the plaintiff has no such interest in a controversy as entitles him to maintain an action—that he is not the real party in interest—or that suit was brought by the wrong person or official, must be made in the court below, and cannot be raised for the first time on appeal. Numerous decisions are cited in support of the text, including Bowles v. Wright, 34 Miss. 409, and Fly v. King, 71 Miss. 537, 14 So. 465. However, in order to hold that this question cannot be raised for the first time on appeal, it is not necessary to apply the above principle as broadly as stated.

The appellee, in his capacity as sheriff and tax collector, in bringing this suit, was not a mere intermeddler. He had an interest in the controversy. The taxes sued for were, under the law, due to him. When the assessment rolls were turned over to him, he was charged with the taxes. The rolls were his warrant for their collection, and, under the law, it was his duty in case of delinquencies to proceed to collect the taxes on personal property by distress, and on lands by advertisement and sale. His official bond covered the faithful performance of this duty. In other words, at the time this suit was brought, the appellee had the right to receive and receipt the appellant for the taxes sued for, which receipt, of course, would have been a legal acquittance for such taxes. We think the appellee's status with reference to the taxes sued for is much like the status of the complainant in the case of Beason, Executor, v. Coleman et al., 92 Miss. 622, 46 So. 49. The complainant in that case was executor of a will. The testator had died seized and possessed of lands. The complainant, without any authority given him by the will, filed a bill in the chancery court to vacate a certain land deed made by the testator. The court held that the complainant, in his capacity as executor, had no right to maintain the bill, because the title to the testator's real estate was vested in the devisees under the will, and not in the executor,

but held further that, since the executor was also a devisee under the will, and was seeking to conserve the rights of all parties—in other words, since he was not a mere interloper—the question of his right to sue could not be raised for the first time on appeal.

We have not here the case of a public official bringing a suit about a matter in which he has no concern whatever in his official capacity, and therefore it is unnecessary to decide whether or not, in such a case, his right to sue could be raised for the first time on appeal.

Appellant contends that the statute violates due process because it fails to provide for personal service of process on the taxpayer giving him notice and an opportunity to be heard at the equalization meeting of the board of supervisors. In considering this question, it should be borne in mind that the assessment of appellant's property was, in every respect, legal. There was no attack made upon it in the court below, nor is there any made in this court. The last clause of the statute provides that, in all actions for the recovery of ad valorem taxes (the kind of taxes here sued for) "the assessment roll shall only be prima-facie correct." If the law made the assessment roll conclusive as to the amount of taxes due by the taxpayers, the appellant's position would raise a very grave question; but that is not true, the assessment roll is only prima-facie correct. That means that the presumption of its correctness is rebuttable. New Orleans & G. N. R. Co. v. Walden (Miss.) 133 So. 241. Therefore, when an action is brought for taxes, under this statute, the taxpayer is of course summoned into court by process personally served, and there given an opportunity to be fully heard, and on the trial he will be permitted to rebut if he can, the prima-facie correctness of the assessment roll.

The Supreme Court of the United States, in the case of McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335, held that a statute which gives the taxpayer the right to en-

join the collection of the tax charged against him, and to have the validity of such tax decided by the court, furnishes the taxpayer due process of law, notwithstanding the statute requires that the taxpayer give security in advance as in other injunction suits.

Affirmed.

Ethridge and Cook, JJ., dissent.

Ethridge, J., delivered a dissenting opinion.

In my opinion the decision of the majority in this case is directly contrary, upon the point of the right to sue, to the case of Carrier Lumber & Mfg. Co. v. Quitman County, 156 Miss. 396, 124 So. 437, 438, 125 So. 416, 66 A. L. R. 614. In that case the suit was instituted by Quitman county for taxes due the county by the lumber company upon certain lands in the county. The lands had been attempted to be sold, but the method of conducting the sale was alleged to have rendered the sale illegal and void. The lands had been struck off to the state, but it was earnestly contended that the sale and the striking off to the state was void because of noncompliance with legal requirements, and that the county was entitled to proceed under the statute referred to in the majority opinion in an action of debt against the state for the taxes due the county. In the concluding part of the opinion of the majority, in Carrier Lumber Co. Case, the court said: "But it is said finally that the objection that the state is no party to this action is no more than an objection for nonjoinder, and it is insisted that, since the point was not taken by demurrer or plea in the trial court, it cannot be availed of here. From what we have said it is made apparent that the question is not one merely of nonjoinder, but rather it is the deeper one that there was no right of action in the county at the time the action was brought—a defense which may be

and is raised under the plea of the general issue. Indeed, it is a defense which could be made on appeal, although the defendant had suffered a judgment to be taken by default, the rule being that, where on the face of the pleadings no cause of action is stated in behalf of plaintiff, no judgment in favor of plaintiff can be allowed to stand. Pease & Dwyer Co. v. Somers [Planting Co.], 130 Miss. 147, 93 So. 673—a rule which holds in law as well as in equity. Odom v. Railroad Co., 101 Miss. at page 656, 57 So. 626; Penn. Mut. Life Insurance Co. v. Keeton, 95 Miss. 708, 49 So. 736; 34 C. J. pp. 153, 154.'' These cited authorities sustain the position for which they were cited by the court in that case.

In order for the plaintiff to maintain the suit, he must have a right of action, and the declaration must show the right of action. The declaration in the present case is founded upon a cause of action in the sheriff per se; that is, it is founded upon the theory that the plaintiff is authorized by law to sue. If the officer is not authorized to sue at law, the suit by him is no more effective than a suit by a private individual.

In volume 20 of Encyclopedia of Pleading and Practice, page 589, under title, ''By Whom Action in Behalf of State Instituted,'' it is said: ''The state can be recognized by the court as a suitor in legal proceedings only through the agents or representatives appointed by law to speak and act in its name, and unless a proper agent or representative is present, in legal contemplation the state is not present; and this presence of the agent or representative can be made known and attested only by the record.'' The cases of People v. Navarre, 22 Mich. 1, and Benalleck v. People, 31 Mich. 200, were cited to support, and do support, the statement of the text. It is held in these cases that the state can only be bound in an action by an officer who is authorized to act for the state, and that the record must show the right to act.

I think the principles of the case of McBride v. State Revenue Agent, 70 Miss. 716, 12 So. 699, in which the question of the right of suit by an officer on behalf of the state or any political subdivision is discussed, apply here; in that case certain sections of the Code gave to the state, county, and municipality where liquors were sold a right of action against the seller for the recovery of the amount of the license, and suit was brought by the state revenue agent on behalf of the state, county, and municipality for the amounts involved against McBride and others for selling liquors without buying a privilege tax. In discussing the rights of the sheriff and tax collector and the revenue agent with reference to this suit, the court, on page 723 of the Mississippi Report, 12 So. 699, 701, said:

"By the act of February 24, 1890, a civil liability subjection to the ordinary suit at law was also declared in favor of the state, but the right to institute or prosecute the civil suit was not vested in the tax collector. The collection he was to make was by distress, for the charge was yet treated as a tax, to be collected as such, with the added remedy of the civil action by the state, to be prosecuted by such agencies as the state should designate. Section 1592 of the Code manifestly and without doubt imposes a penalty, and not a tax, a part of which is given to the municipality in which the offense is committed. Though the very nature and character of the charge is thus changed, the language of the pre-existing statutes was retained, and the sheriff and revenue agent were authorized and directed to assess and collect the sums, for payment of which the offender was made liable. . . . We have declared that it is competent for the legislature to direct and declare in what manner and by what persons the existing rights of action of the state or a municipality may be prosecuted. But we have held, and must always hold, that the state may not by mere legislative declaration create a right

and execute it by its executive officer, and we must now decide that so much of section 1590 of the Code of 1892 as authorizes the sheriff and revenue agent to assess and collect by distress the penalty thereby imposed is violative of article 3, section 14, of the constitution. The penalty prescribed is not a tax, and cannot be made one by the mere authority to 'assess' it as such.

"It is unfortunate that the civil action given to the state, counties, and municipalities by the concluding clause of the section was not authorized to be instituted by the revenue agent, as it well might have been. But the right to sue is by the clause limited to the state, county, or municipality, and is not conferred on this officer."

The court reversed the trial court and dismissed the bill of the revenue agent because he did not have authority to conduct the suit.

Another case, and one which, it seems to me, is conclusive of the question, is State v. Bias, 65 Miss. 510, 4 So. 785, 786. In that case the state revenue agent brought a suit against a former sheriff and tax collector and sureties on his bond to recover certain sums received by the sheriff and tax collector which had not been paid over by him to the proper officer required by law. The defendant pleaded a former recovery on the same form of action instituted in 1886. In the former suit the state revenue agent after his term of office had expired by limitation of statute instituted a suit and recovered judgment upon the alleged cause of action. The court held that, although this former judgment had been recovered by a person under the belief and acting upon the theory that he was the state revenue agent, and authorized to maintain the suit, this was not an answer to the second suit; that, the officer having no authority to represent the state, his action was not effective in asserting any state right or binding the state to the suit. In the concluding part of the opinion the court said:

"The conclusion, therefore, is that the act of 1880 had expired by limitation before the institution of the suit by Adams; that there was not at that time any such office as that of revenue agent, and per consequence there could not be either a de jure or de facto incumbent; that assuming to act as such did not invest Mr. Adams with the official authority to represent the state; and that a recovery by him was not a recovery by the state; wherefore, the present suit is maintainable. It is but justice to Mr. Adams, by whom the former suit was prosecuted, to say that his right to sue as agent of the state has not been controverted. We doubt not that he has acted in the utmost good faith in continuing in the performance of what he thought was official duty." It will be seen by this opinion that an officer, having no right to sue on behalf of the state or the county or the municipality, does not represent it, and his act is not the act of the state or the county or the municipality. Applying that principle to the case before us, the act of the sheriff in bringing suit was not the act of the county, or the state, and the judgment, although it might be paid, would not be an answer to another suit by the state tax collector, or by the attorney-general, who have the right in such case to sue on behalf of the state and of the county.

It was held in Yazoo & M. V. R. Co. v. West, 78 Miss. 789, at page 811, 29 So. 475, that a sheriff had no right to institute a suit to collect taxes. While the sheriff had not brought suit in that case, what was said by the court was proper to maintain the point decided, and it is not mere obiter dicta.

In Henry v. State, 87 Miss. 1, 39 So. 856, the case of the right of the Governor to maintain a suit in the name of the state was questioned, and the court held that the constitution enumerating the powers of the Governor by necessary implication excluded powers not named therein, and the Governor had no power or right to institute

a suit in the name of the state, although at common law the suits in behalf of the state were usually instituted in the name of the Governor, but sometimes in the name of the attorney-general. At page 29 of the Mississippi Report, 39 So. 856, 861, the court said: ''But it is said the governor may also sue, because of necessary implication from the constitutional and statutory provisions that he is the 'chief executive,' that he is the 'commander in chief of the militia to execute the laws,' etc., and that 'he shall see that the laws are faithfully executed,' etc. In other words, the position seems to be that the attorney-general may sue by express warrant of law, but the governor is to 'see that the laws are faithfully executed,' etc., and therefore the governor may sue, which sequitur is not plainly to be seen in construing powers under constitutions and statutes. If either may sue, it is interesting to examine results. May each bring a separate suit? If the attorney-general, or a district attorney, in his proper sphere, sues first, may the governor appear and dismiss the suit, because he is 'chief executive?' It is idle to say the power would not probably be exercised. The people knew that powers given will be, or might be, exercised, in real or supposed emergencies, and they designed to confer power only where they have expressed the purpose, or where it is necessarily implied from its expression.''

Another reason for holding that a sheriff cannot sue is that, by section 6995, Code of 1930, it is provided that in all suits against delinquent taxpayers the assessor and tax collector shall be made parties, and, if it shall appear that the failure of the taxpayer to properly assess or pay the taxes was caused by any wilful default or negligence of the assessor or tax collector, judgment shall be rendered against the defaulter or defaulters for the amount of twenty per cent additional. This case deals with suits by the state tax collector, and shows that it was the purpose of having the sheriff and the assessor

made defendants to all suits against individual delinquent taxpayers in order to recover from the sheriff or assessor, if the fault was through him, the revenue agent's commissions. Another reason why the sheriff cannot maintain the action is that he is given the power of distress by section 3238, Code of 1930, which power of distress is equal to the power of an execution on a judgment. In other words, to collect taxes the sheriff can seize and sell any taxable property owned by the taxpayer without a judgment just as effectively as he could do it with an execution, and why permit litigation and the long course it sometimes runs when a simple distress will accomplish the same result. The only difference between a distress and a judgment is that the judgment follows the person, and subsequently acquired property may be afterwards seized, and it is manifest that the legislature never contemplated that the sheriff should sue and represent the state and counties. He is not empowered by law to employ attorneys, and is not usually an attorney himself, and to permit him to maintain suits would be in many cases to jeopardize the rights of the states and the counties.

Coming now to the question as to whether there is any cause of action, we must consider the statute as it is written and what may be done under it in testing its constitutionality, and, of course, in doing so we are to bear in mind the course of decisions in the long line of cases construing the statutory provisions for assessing and collecting taxes. Under section 3122, Code of 1930, which declares a tax a debt recoverable by action, it is provided, and was necessary to provide to make it a valid statute, that the assessment roll was not final. The assessment is made final by another statute and by a long list of decisions of this court, which shows that an assessment cannot be attacked after it becomes final under the law. Section 3166, Code of 1930, among other things, provides that all persons who fail to file objec-

tions shall be concluded by the assessment and precluded from questioning its validity after its final approval by the board of supervisors or by operation of law.

In Adams v. Luce, 87 Miss. 220, 39 So. 418, the court held that, although an assessment on the roll was void, after the property was listed on the roll it could not be back-assessed, that the assessment was conclusive, and the state could not assess such property for back taxes, although the property had never been legally assessed.

In Robertson, State Revenue Agent, v. Bank of Yazoo City, 123 Miss. 380, 85 So. 177, it was held that an assessment of property against a bank, made in accordance with a statement of its property filed with the assessor, is not void, and that an assessment of property on such statement is not invalid even though the property is intentionally undervalued by the owner when listing its property. In that case the contention of the revenue agent was that the assessment was fraudulently made for the purpose of defeating the state and county of their taxes, and that no sworn statement was filed as required by law, and that the property could be back-assessed. The court held that the assessment was valid, although intentionally undervalued with the fraudulent intent of defeating the state of a fair assessment.

In Long Bell Co. v. McLendon, 127 Miss. 636, 90 So. 356, 358, it was held that a void assessment on the rolls could not subsequently be inquired into where the property was listed or brought in view of the taxing authorities, and that no back assessment of such property could be made. A similar holding was made in Miller v. Copeland's Estate, 139 Miss. 788, 104 So. 176.

It seems to me that, as long as these decisions stand, no suit can be maintained because the roll would be conclusive, and under Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, it was held that a personal judgment could not be rendered against one in a suit where he had not been personally served and given an opportunity to de-

fend the obligation before it became a binding obligation. In that case it was held that the state had jurisdiction over its property within its boundaries and any reasonable proceeding, giving reasonable notice and reasonable opportunity to be heard and contest the obligation would be binding on the property, although no personal summons was served upon the defendant, but, before a personal obligation or a judgment could be had against him, he must be served with a summons. The present opinion may escape the force of this decision of the United States Supreme Court, but it is entirely against previous decisions of this court, in which it is held that the equality and uniformity clause of the constitution is violated and the provision of the constitution for a county assessor is violated by a proceeding for assessment which ignores the scheme of our own constitution. It was distinctly held in State v. Tonella, 70 Miss. 701, 14 So. 17, 22 L. R. A. 346, that the assessment for taxation can only be made by the officer designated by law, and, where the constitution devolves the duty of assessing upon a certain officer, the legislature cannot substitute another. In that case it was held that section 112 of the constitution of 1890, requiring that taxation shall be uniform and equal and that assessment for taxation shall be under general laws and uniform rules according to value, contemplates that such assessment shall be made by the assessor provided for by section 138 of the said constitution, and that chapter 126 of the Code of 1892, in so far as it provides that the state revenue agent may assess for ad valorem taxes property within this state that has escaped taxation, and may collect the taxes thereon, is a departure from the constitutional scheme of securing uniform and equal taxation through assessment by local assessors in each county, and is therefore unconstitutional. In that case the legislature had conferred upon the revenue agent the power to make an assessment against property which had escaped tax-

ation, but it was held that it was beyond the legislative power under sections 112 and 138 of the constitution to confer the power of making an assessment upon other persons than the assessor and the legislative scheme enacted for the equalization of property under the law.

It is said in the majority opinion in the present case that the assessment roll is only prima-facie correct, and that it is left to be litigated subject to the right of either party to show the real facts, and therefore that in the suit to recover taxes the legality of the tax and of the assessment sought to be imposed may be litigated. That holding is directly contrary to the Tonella and other cases following that. The statute, however, goes further and provides that taxes imposed by law may be recovered by an action, or that it constitutes a debt against the person owning the property whether the property was assessed or not. A careful reading of the Tonella Case, which has long been in force and recognized as authority in this state, will show that the uniformity scheme required a comparison of the property of each individual with that of other individuals, and the fixing of value thereon in a proceeding in which all are or may be heard.

In Enochs v. State ex rel. Roberson, 128 Miss. 361, 91 So. 20, the court held that, where a statute creates a tax and provides also a special remedy for its collection, such remedy is exclusive, and an action to recover the tax will not lie in the absence of the legislature authorizing it. It was there held that no tax is a recoverable debt by action unless made so by statute, and it will be assumed that our inherent tax act imposed is not a personal liability until after it is assessed in the exclusive manner prescribed by the act. And it was held in that case that the assessment could not be made through the general court while seeking a discovery of the amount of the tax and the rendition of the judgment therefor.

Our law provides fully how the tax collector shall collect the taxes. It would be a strange condition of affairs if a person whose property is seized by distress could not question the validity of the assessment roll or the value of the property as therein fixed, whereas he could do so under the statute involved in this litigation. Our own court has held that a personal judgment cannot be rendered upon properties substituted for personal summons; that, while the legislature may subject property to a demand, it cannot impose a personal obligation without service of personal summons. Cudabac v. Strong, 67 Miss. 709, 7 So. 543, 544; see, also, Rand v. Hanson, 154 Mass. 87, 28 N. E. 6, 12 L. R. A. 574, 26 Am. St. Rep. 211. See, also, Harkness v. Hyde, 98 U. S. 476, 25 L. Ed. 237; Brooklyn v. Insurance Co., 99 U. S. 362, 25 L. Ed. 416; Empire Twp. v. Darlington, 101 U. S. 87, 25 L. Ed. 878.

A tax does not become a debt until it is assessed in a proceeding provided by law. See State v. Thibodeaux, 69 Miss. 92, 10 So. 58; Thibodeaux v. State, 69 Miss. 683, 13 So. 352; State v. Adler, 68 Miss. 487, 9 So. 645; State v. Piazza, 66 Miss. 426, 6 So. 316; State v. Taylor, 68 Miss. 730, 9 So. 894; State v. Vicksburg Bank, 69 Miss. 99, 10 So. 102; Hattiesburg Grocery Co. v. Robertson, 126 Miss. 34, 88 So. 4, 25 A. L. R. 748.