BAY ST. LOUIS, CITY OF, *v.* HANCOCK COUNTY.

1. STATUTE OF LIMITATIONS. *Code* 1892, §§ 2730, 2734. *State. County. Municipalities. Lands for public purposes.*

   The statutes of limitation have never operated against the state, or any subdivision or municipal corporation thereof, so as to invalidate their title to property owned for governmental purposes, such as court houses, jails and streets.

2. BOARD OF SUPERVISORS. *Contracts. Sale of room in courthouse. Ultra vires.*

   The board of supervisors had no power in 1874 to contract with a city so as to invest the latter with title to a room in the courthouse of the county.

3. COURTHOUSES. *Possession of room in. Tenant at will. Proceedings to remove. Code* 1892, §§ 2547–2557.

   The possession by a city of a room in the courthouse of the county, under claim of a purchase thereof from the county—the county

having no power to sell—is that of a tenant at will; and the city can, on notice to vacate, be removed therefrom by proceedings under Code 1892, §§ 2547–2557, providing a summary remedy for the removal of tenants wrongfully holding over.

4. SAME.

One in possession of lands belonging to a county under a pretended contract, which is void because the board of supervisors had no power to make the same, is a tenant at will of the county, and may be removed as such. .

FROM the circuit court of Hancock county.

HON. JAMES A. NEVILLE, Judge.

Hancock county, appellee, was plaintiff in the court below; the City of Bay St. Louis, appellant, was defendant there.

The case was an action, under code of 1892, §§ 2547, 2548, by Hancock county, claiming to be the landlord of the city of Bay St. Louis, to remove the city as its tenant from a room in the courthouse of the county. The proceeding was instituted before a justice of the peace and was predicated of an affidavit, as required by statute.

The affidavit averred the county's ownership of the property, that the city took possession of the room in 1874, by consent of the county, and became its tenant at will, that the county, August 16, 1900, terminated the tenancy by ordering and giving written notice to the city to vacate sixty days thereafter, that the sixty days had expired but the city still remained in possession. This affidavit was made and filed October 17, 1900.

The answer of the city was a denial of the tenancy, an assertion of ownership, a claim that it had paid $700 of the $3,500 for which the house was built, and did so under an agreement that the city should own the room for municipal purposes; that it took possession of the room as soon as the house was built, in 1874, and had occupied it ever since, adversely to the county, claiming ownership and the statute of limita-

tions was relied upon as perfecting the city's title, and further claimed that if the agreement, payment and occupancy did not perfect its title to the room it yet made the parties to the suit tenants in common of the building and the action would not lie against it.

The case was tried in the justice court, resulting in a judgment for the city, from which the county appealed to the circuit court.

A trial was had in the circuit court, upon which, at the conclusion of the evidence, which tended strongly to show the truth of the matters of fact set up by the answer, the court gave a peremptory instruction for plaintiff, the county, and the city appealed to the supreme court.

*Bowers, Chaffe & McDonald* and *McWillie & Thompson,* for appellant.

It must be apparent to the court that there was a real controversy as to whether the city was ever the tenant of the county; certainly the evidence cannot be said to so completely establish the tenancy as to justify a peremptory charge. It must be remembered that no matter what the rights of the county were, it cannot maintain this suit save by showing that it was the landlord of the city. This is true without reference to the question of the statute of limitations. If the suit had been brought within one year after the city went into possession of the room the county could not have recovered in this action without showing itself to be the landlord.

Certainly the evidence tended to show that the city became the owner of the room; it is clearly established that it paid $700 for it. An unusual amount to be paid in advance for the rent of one room in a $3,500 house. A parol sale is as good for our purposes in this case as one evidenced by a deed, the question being under what claim did the city enter into the premises. It is affirmatively shown that the city claimed to

be the owner.   It has so claimed since 1874, and this claim was known years ago, if not from the beginning, by the board of supervisors, for several members of the board testify to their knowledge of the fact.   It is well established that the statutes of limitation run against a county.   19 Am. & Eng. Enc. of Law (2d ed.), 191; *Clements* v. *Anderson,* 46 Miss., 581; *Chamberlin* v. *Lawrence Co.,* 71 Miss., 949.   This being true, the city obtained title by its adverse possession.

But it may be said (was said in the court below, as we are advised) that the county had no power to sell the room in controversy.   If the claim be conceded it does not advance appellee's cause.   A county can no more assume that one wrongfully in possession of its lands is its tenant than can an individual.   Let's carry the idea a little further.   Assume that the county was without power to sell the room, that nevertheless it did so, executing a formal deed, that the city went into possession under the deed and held for twenty-five years, in such case could the county recover from it in this proceeding by assuming that the city was its tenant holding over after the expiration of its lease?   Most certainly not.   This is not an action of ejectment or other suit to try titles, but is a special statutory proceeding, which can be maintained only by a landlord against his tenant.   Certainly if the city entered in 1874, claiming the room as its own, and has so remained ever since, under such claim, it has acquired the title, there being no question about the statute of limitations running against the county.   Certainly it cannot be said that there is no evidence in this record tending to show that the city did so enter and claim.

But, again, if the county had no power to sell, it had no power to lease.   A lease is but a sale.   Therefore, on the assumption of a want of power, the county allowed the city to enter under a claim of title and there remain, claiming to be the owner for a quarter of a century, and thereby the county lost the property.   But if the county had no power to sell or to

lease, how can it claim that it did lease and deny the city's right to claim that it sold?

But, beyond all this, the county cannot recover in this proceeding on its own theory. If it be landlord and the city be its tenant, it has wholly failed to show the expiration of the asserted lease. Who can say from the evidence, assuming that the $700 was paid as rent, when the lease was to expire? The burden of proof was on the county to show three things: (1) That it was the landlord; (2) that the city was the tenant of the room, and (3) that the lease had expired. Not a word in the evidence throws any light on the third prerequisite of a recovery. If it be said that the lease was by parol and could not be good beyond one year, we answer that it is well established that a holding over after the end of a yearly term creates a tenancy from year to year, and that a tenant so holding can only be removed at the end of a year; and there is nothing in this record to show at what date the yearly holding began or ended. This suit was begun on the 17th day of October, 1900, and the suit proceeds upon the assumption that the lease expired on the 16th of that month, a fact which is assumed but not proved. It may have expired on the 16th, or any other day of any other month, so far as this record discloses.

It cannot be answered that the tenancy was at the will of the supervisors and terminable at its pleasure, because there is no evidence which even tends to establish (if a tenancy be assumed) that such a leasing was had.

*Miller & Ford* and *Dodds & Griffith,* for appellee.

Under every statute, at least since 1871, authorizing the boards of supervisors of the various counties to acquire property for public purposes, such authority was subject to the mandatory provision that the title acquired should be in fee simple. Code of 1892, § 4132; code of 1880, § 342; code of 1871, § 242. Prior to the enactment of § 304, code of 1892, there was absolutely no power in the boards of supervisors to dispose

of county property, whether used for public purposes or not, and it required express legislative authority to confer such power. *Jefferson County* v. *Grafton,* 74 Miss., 440.

Appellant is no better off, if the contract with the city be treated as a perpetual lease, for in the absence of the power to alien, the board could not do indirectly what it lacked the power to do directly, that is, dispose of public property by making a perpetual lease. And we insist that there is no difference in legal effect between a perpetual lease and an absolute conveyance, and one is as much an alienation of property as the other. This court, in the case of *Howard* v. *State,* 53 Miss., 69, and again in *Jefferson County* v. *Grafton,* 74 Miss., 442, has expressly declared that boards of supervisors, being creatures of statute, endowed only with special powers, and created for special purposes, can exercise only such powers as are expressly conferred, or which are necessarily implied, and that it mattered not whether their action be regarded as judicial, legislative or ministerial, excessive assumption of authority, in either capacity, is simply void. The fact that the county did, or might have profited by the transaction makes no difference. *Jefferson County* v. *Arrighi,* 54 Miss., 668; *Bridges* v. *Clay County,* 58 Miss., 817; *Benton County* v. *Patrick,* 54 Miss., 240; *State* v. *Vice,* 71 Miss., 912. The present statute, § 344, code of 1892, making all contracts made by boards of supervisors in violation of any of the provisions of law, void, was in force in 1874, when this alleged contract between the county and city was made. Section 1394, code of 1871. There being no color of authority warranting the board of supervisors to sell the public property of Hancock county in 1874, when this alleged arrangement was made, their act, if indeed there was such action, agreeing to turn over to the city perpetually this room, was *ultra vires* and void, and the city became simply the tenant-at-will of the county. Taylor's Landlord and Tenant, sec. 61-63; *Ezelle v. Parker,* 41 Miss., 520. A mere licensee (exactly the position of the city in this

case) is nothing more than a tenant-at-will.    *Johns* v. *McDaniel.*
60 Miss., 486.

On the question of the statute of limitations, we claim that
this is one subject on which the American courts are practically
unanimous.    The only question in cases of this kind seems to
be a determination of the capacity in which a county, munici-
pality or other public corporation holds the property.    If prop-
erty is owned by a county in its private capacity—that is, prop-
erty that may have been donated to it or that it may have been
acquired in the collection of a debt, or otherwise, then the statute
of limitations runs against it just as it would against a natural
person.    But where property is held by a county or municipal-
ity in trust for public use, or, as it is expressed in most of the
cases, for governmental purposes, then no laches on the part of
public officers in asserting the rights of the public will operate
to bar the right to reclaim it.    The case of the *County of Yolo* v.
*Barry,* 79 Cal., 375 (12 Am. St. Rep., 152), was where prop-
erty that a county had acquired for a county hospital had been
sold adversely for the statutory period, and the court held that
as the maintenance of a hospital in connection with a poorhouse
and prisons was necessary in order to carry on the county
government, that such use was a government one, and that the
statute of limitations would not apply to property thus acquired
and used.

The case of *City of Bedford* v. *Willard,* 26 Am. St. Rep.,
563 (133 Ind., 562), was a case where property, largely more
than was necessary for public purposes, had been conveyed to a
county in consideration of the location of a county seat.    The
county had platted and sold some of the property, and certain
persons had gotten in possession of some of the undisposed of
land and held it adversely for the statutory period, and the
court in that case, following the general rule on the subject,
held that as this property was not being actually used for
county purposes, that the county held it in its private capacity,
and therefore that the statute would bar its right in such cases.

The case of *Ralston* v. *Weston,* 46 W. Va., 544 (76 Am. St. Rep., 834), was a controversy over a public highway, which was held to be property used for public, or governmental purposes, and that the statute would not bar the public right to reclaim it. To the same effect was the case of *Webb* v. *Demopolis,* 96 Ala., 116, in which it was held that no laches in resorting to legal remedies, nor the statute of limitations nor the doctrine of equitable estoppel can defeat the right of a city to maintain a suit to abate a nuisance created by the obstruction of a street. Note to *Snyder* v. *Hutchinson,* 76 Am. St. Rep., 494.

This court, following the same rule in the cases of *Vicksburg* v. *Marshall,* 59 Miss., 571, and *Witherspoon* v. *Meridian,* 69 Miss., 295, held that the streets of a municipal corporation are held in trust for the public, and that the statute of limitations does not run in favor of an adverse occupant, so as to give title under the statute. The fact that these cases were controversies over streets of a municipality, while furnishing the proper subject for the application of the rule, was not the only kind of a case, or property, to which the rule will be applied in this state—it is simply one of the kinds of property that is held in trust for public or governmental use, and in applying it in these cases the court was simply following the general rule on the subject, which applies to every kind of property held in trust for public or governmental uses and purposes.

Argued orally by R. H. Thompson, for appellant.

CALHOON, J., delivered the opinion of the court.

Antecedently to the constitution of 1890, the law was that the statutes of limitation ran against counties and municipal corporations; but even then this was true only as to property not used or held for public or governmental purposes, such as courthouses, jails, streets, etc. The contract of the

county in this case, made in 1874, with the municipality, that the latter should contribute to build a courthouse for the county, and thereby become owner of a room in it for city purposes, was *ultra vires* of the board of supervisors, and void. The pursuant occupation of the room by the city, and its continuous occupation of it for twenty-six years ·constituted no bar, and the city, while so occupying, was simply the tenant-at-will of the county. On the expiration of the sixty days' notice to vacate, the right of tenancy by the city, and its term as tenant, expired, and its holding after that was a holding over after the expiration of the term in the purview of code, § 2547, and entitled the county to the remedy provided by that section. It is immaterial that the city thought it owned the room, under the facts, and claimed adversely.

*Affirmed.*