Nickey *et al. v.* State *ex rel.* Attorney-General.

(In Banc.   Jan. 30, 1933.)

[145 So. 630.   No. 30067.]

**W. E. Gore,** of Jackson, and **T. N. Gore,** of Marks, for appellants.

Jno. **W. Dulaney,** of Tunica, and **E. C. Sharp,** of Jackson, for appellee.

Argued orally by **W. E. Gore**, for appellant, and by **E. C. Sharp**, for appellee.

**Anderson, J.,** delivered the opinion of the court.

The state, on the relation of the attorney general, filed its bill in the chancery court of Tunica county against appellants, to recover of them the sum of seven thousand four hundred eighty-three dollars and twenty-two cents, the aggregate of the taxes and drainage district assess-

ments due by appellants to the state, the county of Tunica, and the latter's taxing districts, the Yazoo-Mississippi levee district, and the Brunswick extension, and the Lake Cormorant drainage district, and the fees and damages incurred as a result of the advertisement by the tax collector of the county of appellants' lands for sale for their payment. Appellants are nonresidents of the state. The chancery court acquired jurisdiction by virtue of a foreign attachment which was levied on lands belonging to appellants in Tunica county. Appellants appeared and answered the bill. There was a trial on bill, answer, and documentary and oral proofs, resulting in a decree in favor of the state, as prayed for. From that decree appellants prosecuted this appeal.

The taxes and assessments involved are for the year 1928. The state alleged in its bill that appellants owned certain lands in Tunica county, describing them; that these lands were duly and legally assessed for taxes for the year 1928; that the taxes, damages, and costs due for 1928 were as follows: State taxes, six hundred forty-six dollars and eighty-one cents; general county taxes, nine hundred fifty dollars; highway road bond interest, sixty-six dollars and sixty-four cents; Yazoo-Mississippi levee ad valorem, and Brunswick extension, four hundred seventy-seven dollars and eighty-three cents; Yazoo-Mississippi Delta acreage, fifty-two dollars and twenty-six cents; Beat No. 2 ad valorem and bond interest, seven hundred sixty-eight dollars and ten cents; Lake Cormorant drainage district, three thousand eight hundred thirty-five dollars; printer's fee, two dollars and forty cents; clerk's fee, two dollars and sixty cents; sheriff's fee, seven dollars and fifty cents; damages, six hundred seventy-nine dollars and eight cents; total, seven thousand four hundred eighty-three dollars and twenty-two cents. That the lands on which the taxes were due were within the Yazoo-Mississippi levee district and Brunswick extension, and also the Lake Cormorant drain-

age district; that none of the taxes against the lands for 1928 had been paid; that the lands against which these taxes were assessed were chiefly valuable because of their growing timber; that exclusive of the timber, they were not of sufficient value to pay said taxes; that at the time of the filing of the bill, which was on the 23rd day of July, 1929, appellants were engaged in removing the timber from the lands, which, if continued, would strip them of their value to the extent that they would be insufficient to pay said taxes, and for that reason would be knocked off to the state when sold for taxes. That in addition to the lands against which said taxes were a charge, appellant owned other lands in Tunica county, which were described in the bill.

The bill prayed that all the taxes involved be declared a debt against appellants, and decree be rendered therefor, and that all the lands described in the bill be attached to satisfy such decree. Attachment was issued, as prayed for in the bill, and levied on all the lands described therein. Thereupon appellants gave a bond, as provided by statute, in the sum of fifteen thousand dollars, discharging the attachment. The case presents the following questions for decision: (1) Whether the lands were legally assessed for their ad valorem taxes.

(2) Whether section 3122, Code of 1930, declaring every lawful tax a debt, for which action may be brought; violates the due process provisions of the state and Federal constitutions (Const. U. S. Amend. 14; Const. Miss. 1890, sec. 14).

(3) Whether drainage district taxes come within the provisions of that statute.

(4) Even though drainage district taxes do not come within the provisions of that statute, whether or not, under the allegations of the bill, the state had the right to subject other property of appellants to the payment of such taxes than the property against which they are assessed.

(5) Whether the state has the right to recover the statutory fees, costs, and damages chargeable against lands delinquent for their taxes, where they have been advertised for sale by the tax collector, but not sold.

(6) Conceding that the statute includes the taxes involved, whether or not the state had the right to bring this suit before the tax collector of the county had exhausted the statutory remedies provided for the collection of such taxes.

We will consider these questions in the order stated. There is little, if any, conflict in the material evidence. The tax collector of the county, whose duty it was to collect these taxes, had advertised appellants' lands, against which they were made a charge, for sale for their payment on the first Monday in April, 1929. Shortly before the day of sale the tax collector of the county came to the conclusion that the lands would not bring a sufficient amount to pay the taxes. His representative and the attorney-general conferred in reference to the matter, and decided for that reason that the tax collector should not sell the lands for their taxes, but that the attorney-general should bring this suit to recover them. Accordingly the suit was brought; the advertisement by the tax collector for sale was discontinued; and the lands therefore were not sold by him.

There seems to be no difficulay in determining the question whether the lands were legally assessed. The members of the court are unanimous in reaching the conclusion that they were. The grounds urged against the validity of the assessments are not new; they have been passed upon by decisions of this court; therefore, we see no good purpose to be accomplished in another discussion of them.

Section 3122, Code of 1930, provides that every lawful tax assessed, levied, or imposed by the state, or by any county, municipality, or levee board, whether ad valorem, privilege, excise, income, or inheritance, shall be a debt

due by the person or corporation owning the property, or carrying on the business or profession on which the tax is imposed, whether properly assessed or not, and may be recovered by action, ''and in all actions for the recovery of ad valorem taxes the assessment roll shall only be prima facie correct.''

This statute, except some recent additions which have no bearing on the questions involved in this case, has appeared in all of our codes, including, and since, the Annotated Code of 1892 (sec. 3747). Appellants contend that the statute denies due process, because it fixes the tax as a debt, without giving the taxpayer a hearing on the debt issue. It is true we have no statute providing for personal service of process upon the taxpayer, giving him notice and an opportunity to be heard at the meeting of the board of supervisors fixing the value of his property as the basis for taxation. But as held in George County Bridge Co. v. Catlett, 161 Miss. 120, 135 So. 217, 219, the taxpayer is given his day in court on that issue by the last clause of section 3122, which provides that, in an action to recover ad valorem taxes, the assessment roll shall only be prima facie correct.

In that case the court used this language: ''If the law made the assessment roll conclusive as to the amount of taxes due by the taxpayers, the appellant's position would raise a very grave question; but that is not true, the assessment roll is only prima facie correct. That means that the presumption of its correctness is rebuttable. . . . Therefore, when an action is brought for taxes, under this statute, the taxpayer is, of course, summoned into court by process personally served, and there given an opportunity to be fully heard, and on the trial he will be permitted to rebut if he can, the prima facie correctness of the assessment roll''—citing McMillen v. Anderson, 95 U. S. 37, 24 L. Ed. 335.

In Wells Fargo & Co. v. Nev., 248 U. S. 165, 39 S. Ct. 62, 63 L. Ed. 190, the Supreme Court held that it

was no longer an open question that if a person against whose property a tax assessment has been made shall at any time in the course of the proceedings, before conclusive judgment be rendered, be given an opportunity to contest its correctness, he is afforded due process of law; that there is no denial of due process "in a tax assessment because the valuation was made without notice to the taxpayer, or without an opportunity afforded to be heard, where the mode of enforcing the tax is by a judicial proceeding wherein process issues, and an opportunity is afforded for a full hearing, and only after there is a judgment sustaining the tax is payment enforced."

Notwithstanding this statute has been before this court in several cases, its constitutionality seems not to have been challenged until the George County Bridge Co. case came up. See Illinois Central R. R. Co. v. Adams, 78 Miss. 895, 29 So. 996; Powell v. McKee, 81 Miss. 229, 32 So. 919; Delta & Pine Land Co. v. Adams, 93 Miss. 340, 48 So. 190; Carrier & Co. v. Quitman Co., 156 Miss. 396, 124 So. 437, 125 So. 416, 66 A. L. R. 614; Enochs v. State, 128 Miss. 361, 91 So. 20.

The assessed value is the basis of the debt declared by the statute. It is the valuation fixed by the taxing authorities, upon which the tax levy is to be made. Before that valuation can be conclusively fixed and become the basis of a debt for which an action may be brought, the taxpayer must have his day in court on personal service of process. The last clause of this statute furnishes such a hearing in providing that the assessment roll shall only be prima facie correct. If it is only prima facie correct, that means, of course, the taxpayer is given an opportunity to show the correct valuation; and, in attempting to do so, the same considerations are taken into account as would have been by the board of supervisors at its equalization meeting where the taxpayer had challenged the assessment. The fact that ap-

pellants are nonresidents has no bearing on this question, because they appeared and answered the bill. They were before the court, and stood exactly like they would, had they been residents of the state, and had been personally served with summons.

It is true that in the Delta & Pine Land Company case, and in the George County Bridge Co. case, the taxpayers had, before suit was brought, appeared before the board of supervisors and contested their assessments. We are unable, however, to see how that, on principle, differentiates this case from those cases. In other words, in those cases the taxpayers had two hearings on the issue of the valuation of their property, and in the case at bar the taxpayer had only one hearing. Due process requires only one hearing; not two.

Section 3122 of the Code does not cover drainage district taxes; it only covers state, county, municipal, and levee board taxes, "whether ad valorem, privilege, excise, income, or inheritance." The state contends, however, that because of the following facts it had the right to fix the drainage taxes as a charge on the other lands owned by appellants, which were attached. Those facts were that appellants were denuding their lands in the drainage district of their timber, which constituted their principal value; that they would continue to do so until there would be nothing left except the land, which would be insufficient in value to pay the other taxes and the drainage assessment against them for 1928; that when the timber was removed appellants would permit the lands to sell to the state for state and county taxes, and there would be nothing left to pay the drainage assessments; that under the law the drainage assessments were a lien, not only against the land, but the timber standing thereon. The state's contention is that under the law the fact that appellants were destroying the timber, which was part of the security for the payment of the assessments, gave it the right to resort to other

property owned by appellants for the payment of the assessments, although such assessments are not debts for which a personal judgment may be recovered.

Under our drainage district statutes the assessments are a charge alone on the lands against which they are assessed. They do not constitute a debt against the landowner, and cannot be enforced as such. No other property of the landowner can be subjected to their payment. The question is whether the timber, when it is removed, is entirely freed from the assessment, regardless of what the purpose of the landowner is in removing it.

This exact question was not decided in Matthews v. Panola-Quitman Drainage District, 158 Miss. 647, 130 So. 910, 911; but the principles there laid down, carried to their logical conclusion, can mean nothing else, except that the landowner has the absolute right to remove the timber from his lands in a drainage district, regardless of what his purpose is. The court used this language in that case: ''We hold it was not within the legislative purpose—and therefore is not within these drainage acts—to prevent the removal of the timber at any time and for any purpose desired by the owner, and this, too, without any payment of the installments of assessment to become due on the land subsequently to the removal.''

It would not be practical for the courts to inquire into the question as to what the purpose of the landowner was in removing the timber. As long as the timber stands, the assessments against the land are a lien on the timber, as well as on the land; but when the timber is removed it is freed from the lien, and, as stated, there can be no inquiry into whether such removal was rightful or wrongful, wise or unwise. It is an absolute right. The purchasers of the bonds of these drainage districts are given notice by the drainage statutes that the dominating purpose in forming these districts is to remove a very large part, if not all, of the timber on the lands, in order to

devote the lands to agricultural purposes and promote the public health. We conclude, therefore, that the state had no right to charge any other property owned by appellants outside of his lands in the drainage district, with the payment of the drainage assessments, upon the ground that a part of their security had been destroyed by appellants in the removal of the timber from the lands against which they were assessed.

Appellants gave a bond to discharge the attachment in the sum of fifteen thousand dollars. The condition of the bond is that appellants satisfy any decree which the court might render against them. There is no merit in the contention that appellants are liable on this bond for any drainage assessments the court might find to be due by them, regardless of whether such assessments were chargeable against other lands than the lands against which they are assessed. The condition of the bond must be construed in the light of the decree sought by the state with reference to the drainage assessments. There was not question that the drainage assessments were valid liens on the lands against which they were assessed. It was sought to charge them as liens on other lands. Under the views we have expressed, this cannot be done. Therefore, there is no liability on the bond, so far as the drainage assessments are concerned.

Appellants contend that there could be no resort to section 3122 until the tax collector had exhausted the statutory scheme of collecting. We think Delta & Pine Land Co. v. Adams, 93 Miss. 340, 48 So. 190, 194, is a complete answer to that contention. In that case the tax collector had not exhausted the statutory remedy for the collection of the taxes. It was a back assessment and suit by the state revenue agent to recover the taxes. The court held that the statute declaring taxes a debt for which suit might be brought created an additional and more effective remedy by which the nature of the tax obligation was changed to that of a debt, and applied as well

to back taxes as to current taxes; that the statutory method of collecting back taxes was not exclusive; that the statute creates a new obligation to pay the taxes, as well as a new remedy for their collection, and that the word "action" in the statute does not confine the remedy to courts of law. In discussing the question whether the statutory methods for the collection of taxes had to be exhausted before action could be brought under this statute, the court used this language: "Nor is there anything in the proposition that the remedy provided by section 4740 should be exhausted before resort is had to the remedy provided for by section 4256. Three authorities are cited in support of this proposition, but they all apply only in the absence of statutes like section 4256. We are therefore clearly of the opinion, first, that the remedy provided by section 4740 is not exclusive of the remedy provided by section 4256, where back taxes are involved; but that either may be pursued without reference to the other; the remedy provided by section 4256 being merely cumulative and additional to that provided in section 4740."

As we view it, in order to hold that the state had no right to bring this suit, much of what was decided in that case would have to be overruled. We have not a case here where the state has interfered with the collection of these taxes by the tax collector through the statutory scheme. It was agreed in the record that the tax collector abandoned the statutory scheme, and agreed for the state to bring this suit. The suit is the result of cooperation between the attorney-general and the tax collector. It was thought by them that the taxes might be collected by this suit, but probably could not be by the tax collector. This is not a case where the state has pushed the tax collector out of its way, and taken charge of the situation. It is therefore unnecessary to decide in this case how far the state can go in interfering with the tax collectors in the performance of their statutory

duty in the collection of taxes. If the state must wait until the tax collectors have exhausted the statutory remedies for the collection of taxes section 3122, declaring taxes a debt for which suit may be brought, would be utterly useless. To illustrate, the tax collector pursued the statutory scheme; the lands of the taxpayers are knocked off to the state for their taxes, costs, and damages. The result is that the taxes are paid, and the taxpayer owes no taxes for which suit may be brought.

The chancellor, in his decree, awarded the state the costs of advertising the lands by the tax collector, and the tax collector's statutory damages for collecting delinquent taxes. We are unable to see how the state was entitled to recover these costs and damages. It is true, the lands had been advertised by the tax collector, but they were not sold. The statutory scheme for the collection of the taxes through the tax collector was abandoned. He did not earn his commissions and costs. For those reasons it appears to us that these costs and damages were not recoverable by the state.

The result of these views is that the decree appealed from is affirmed as to all the taxes except the drainage assessments, and that part of the decree awarding the state the tax collector's costs and damages.

Reversed in part and affirmed in part.

**Ethridge, J.**, delivered a dissenting opinion.

I am unable to agree with the majority opinion in regard to a personal liability being created by a tax assessment, and the rights of the attorney-general, on the present record, to bring suit for the ad valorem taxes due state, county, and levee district, etc. I think the assessment was a valid charge against the property attached, and the bond to discharge such judgments as the court might render would be all right, if limited to subjecting the property seized to the tax assessed thereon,

provided the attorney-general had authority to bring the suit.

The attorney-general's bill was against the appellants as partners, doing business under the name of "A. B. Nickey & Sons."

The defendant's answer denied the partnership, and denied knowledge or notice of any proceeding or assessment of taxes. They also set up therein that A. B. Nickey was dead at the time the alleged tax assessment was made.

There could be no judgment created by an assessment against a partnership, and the alleged assessment against "A. B. Nickey and Sons" would clearly be void as to A. B. Nickey, as he was dead.

It is a settled rule in this state that partners cannot be sued, or sue, in their partnership name, and that it is necessary in a suit by partners that the names of the individual members be alleged. Lewis v. Cline (Miss.), 5 So. 112, not officially reported, and Blackwell v. Reid, 41 Miss. 102.

I am of the opinion that the right to sue for taxes cannot be based on section 3122, Code 1930, until the statutory time for collection of taxes by the sheriff has expired, which is on the first Monday of April in each year, and that no action by suit can be brought until after that time.

By statute, taxes constitute a lien upon all property subject to taxation, whether assessed to the true owner or not, from January 1st of each year. Therefore, the assessment of property on the assessment roll, as in the case before us, constitutes a valid assessment against the property itself, but does not constitute a valid assessment against the owners as an individual liability. In order to constitute an assessment against a person, it must be assessed to him, or them, if more than one.

A consideration of the different provisions of the revenue chapter (chapter 61, Code 1930), will show that it

was within the contemplation of the legislature that the statutory proceedings as to the assessment of taxes and the collection thereof be followed up to the time when these authorities were given to completely act, and, unless they failed to act, no suit by any officer could take the place of the tax collector in the collection of taxes.

Under section 3145, Code 1930, and said section as contained in prior codes, the tax assessor is required to assess all lands in his county, and to see that none of the lands escape taxation, and that all are placed on the assessment roll so as to account for every particle of land in the county.

Section 3147 makes it the duty of the supervisors to furnish the assessor with necessary maps and plats of the county, showing all lands of the county, including the municipalities.

Section 3148 provides how the land roll shall be made up, and that when the owners are not known the land shall be assessed to "unknown."

Section 3151 provides for the description and designation of lands.

Section 3161 requires the assessor to file the rolls of assessment with the clerk of the board of supervisors on or before the first Monday in July of each year, with an affidavit appended thereto that he has endeavored to ascertain and assess all the persons and property in his county; has required every taxpayer to make oath as to his property; and showing the name of every person who has refused to make oath. It also provides that if the assessor fails to file his roll on or before the first Monday in July in each year, the board of supervisors, at its July meeting, shall adopt an order showing such failure, and showing to the state tax commission that the assessor has so failed, and the tax commission shall order when such roll shall be completed, and the time

when such objections as may be made thereto may be heard by the board of supervisors.

Section 3162 provides for the equalization of such rolls by the board of supervisors, and shall complete same at least ten days before the August meeting, and advertise that same are ready for inspection and examination.

Section 3163 requires the assessor to attend the July meeting, and all subsequent meetings of the board of supervisors.

Section 3164 provides what shall be done in equalizing taxes.

Section 3165 provides how persons may object to the assessment roll.

Section 3166 provides that objections must be filed, or the assessment will stand, and that such objections must be filed at the August meeting of the board of supervisors, in writing.

Section 3178 makes it the duty of the board of supervisors to carry out the instructions from the state tax commission, and provides for a revision of its instructions.

Section 3179 provides that any aggrieved taxpayer may appeal to the circuit court in the manner provided by law within ten days after the adjournment of the board of supervisors' meeting at which the approval of the roll by the state tax commission is entered.

Section 3180 provides for the procedure of the appeal and its effect.

Section 3191 provides for changes in the assessment roll.

Section 3227 provides for the levy of taxes by the counties and taxing districts.

Section 3229 directs the tax collector to proceed to the collection of taxes, adding the county tax to the state tax, and collecting all together.

Section 3238 provides that all taxes remaining unpaid after the first day of February shall be collected by dis-

tress and sale of any personal property liable therefor, at the courthouse door, unless such property be too cumbersome, after five days' notice of the time and place of sale.

Section 3249 provides that the collector shall sell said land for delinquent taxes on the first Monday of April, first offering forty acres, and if this does not bring the amount due, then he shall offer another similar subdivision, and so on until the requisite amount be produced, or until all the land constituting one tract and assessed as the property of the same owner be offered. It also provides that, if no person will bid for it the whole amount of taxes and costs, the collector shall strike the land off to the state, and that the sale shall be continued from day to day, and that any person sustaining damage by reason of failure or error of the tax collector may recover damages therefor on his official bond.

These various sections are to be construed in connection with section 3122 giving a right to act, which section, in my opinion, clearly contemplated that such right of action shall be postponed until the taxing authorities have had time to pursue the statutory scheme and collect the taxes due.

In Robertson v. Shelton, 127 Miss. 360, 90 So. 83, it was held that the revenue agent could not recover taxes by suit where he had taken no coercive proceeding, even after the first day of April, so long as the tax collector was still collecting taxes.

Under other decisions, when the revenue agent began a proceeding, he had the right to fees resulting from the collection of taxes, although the tax was actually collected and paid to another person than himself.

This case, Robertson v. Shelton, supra, while not directly in point, but by implication is in accord with the view that so long as the tax collector is proceeding to collect the taxes, and so long as the period fixed by him

to act, to-wit, the first Monday in April, has not expired, then no other proceeding shall be taken.

In the case of State v. Piazza, 66 Miss. 426, 6 So. 316, it was held that a statute creating a tax, and providing a special remedy for its collection, should have such remedy applied in the collection of the tax, and that this remedy is exclusive, and does not authorize suit to be brought for the tax. It was also held to be beyond the power of courts to supply by judicial construction what is omitted from the statutes. The court there said: ''If the plain, simple, and inexpensive statutory method of collecting taxes may be disregarded, and the district attorney may become tax-collector at pleasure, by suit at law, in one case, why may it not be done in all cases? And to what consequences would such new and dangerous principle incorporated into our system of taxation, by judicial interpretation, lead? What is the limit of time within which such suits might be brought? To what statute of limitations would the state be subject? How long would the citizen be left to the mercy of spies and informers, and exposed to the vexation and cost of legal proceedings in reference to a burden which is generally sufficiently onerous?''

In Adams, State Rev. Agt., v. Tonella, 70 Miss. 701, 14 So. 17, 22 L. R. A. 346, it was held that the constitutional scheme of assessing property was essential to create liability for taxes, and that the legislature was without power to provide that the assessment should be made by another than the constitutional officer. The statute there involved gave the state revenue agent the power to assess taxes which had escaped taxation, and to collect all revenue improperly withheld from payment, and was, I think, as comprehensive as section 3122, Code of 1930. It is therefore clear to my mind that no right of action existed in the attorney-general, and that he had no authority to suspend the activities of the sheriff in

proceeding to sell, at the time fixed by law, the property, as was done in this case.

The majority opinion conveys the idea to my mind that the attorney-general acted at the instance of the sheriff, in instituting a suit. I do not agree with this idea. What happened, according to what was dictated into the record, is as follows: "By Mr. Dulaney (one of counsel representing the attorney-general). At the request of counsel for the defendants, I will state, as a part of the record, that a conference was held in Jackson, Mississippi, between Mr. Rush Knox, then attorney-general, E. C. Sharpe, assistant attorney-general, and myself, in regard to the subject-matter of this suit, sometime prior to the regular time for selling land for taxes in 1929, and at that conference it was agreed that on my return to Tunica, I would request the tax collector of Tunica county not to make sale of the lands described in the bill of complaint in this case for the recovery of taxes on which bill is filed, and that, in accordance with that request, no sale has been made by the tax collector of Tunica county, Mississippi, of these lands. It is true they were advertised for sale on first Monday of April, 1929, this request was made perhaps a week or so before that date, for the taxes for which this suit is now being prosecuted."

It does not appear that Mr. Dulaney was a representative of the tax collector. He was, perhaps, a representative of the board of supervisors.

But, at all events, I think it is clear that the attorney-general was unauthorized to sue, even though the sheriff was stopped from proceeding with the tax collection. The attorney-general had no right to institute a suit where the condition was brought about by his participation and aid, which prevented the regular procedure, and consequently is not entitled to prosecute the suit here involved, although he might have been authorized to bring suit had the sheriff, of his own accord, and with-

out the influence of the attorney-general, failed to consummate the sale of the lands for taxes.

In my opinion, it is not permissible for the state, or any of its agents, without legislative action, to defeat a taxpayer of his right to let his lands be sold for taxes and knocked off to the state, with the right given by law to redeem should he so desire, within a two-year period. And in the construction of section 3122, this right should not be defeated. If the construction placed upon this section by the majority opinion is correct, it is my opinion that it will violate the equal protection clause of the federal constitution.

It appears from the record in this case that the other taxpayers in Tunica county who did not pay their taxes had the benefit of section 3249, and their property was sold to the state, subject to their right to redeem within two years.

In the case at bar, under the construction given, the appellants are denied this right. They have equal rights with the other taxpayers to let their land go in the regular procedure.

Under the construction given, it is within the power of the taxing authorities to select some taxpayers and give them the benefit of this section, while denying it to other taxpayers by instituting suit to collect the taxes rather than allowing it to be sold in the regular order with the right to redeem in two years.

Under section 3166, Code of 1930, and corresponding sections in prior Codes, if no objection was made to the assessment roll, and no appeal taken therefrom, it became final, and the taxpayer was bound thereby, and so was the state. It could not be changed except under limited conditions provided by section 3191, Code of 1930. If the tax collector did not choose to resort to the distress method and sell the property, then both the state and the taxpayer are not bound by the assessment made, because by the terms of section 3122, the whole

assessment may be opened up and either party may challenge its correctness. It is a little difficult to see how this can be done consistently in connection with the equal protection clause of the constitution.

This suit was instituted in the chancery court, and it has often been held that the chancery court could not be made a tax assessing body. See Enochs v. State, 128 Miss. 361, 91 So. 20, and the authorities there cited.

Section 3122, Code of 1930, making taxes a debt against the owner of property recoverable by suit, as applied to a nonresident of the state is void in so far as it undertakes to impose a personal obligation as distinguished from an obligation imposed on the property for the tax. The cases of Illinois Cent. R. R. Company v. Adams, 78 Miss. 895, 29 So. 996, and George County Bridge Company v. Catlett, 161 Miss. 120, 135 So. 217, and Delta & Pine Land Co. v. Adams, 93 Miss. 340, 48 So. 190, in no manner refer to a nonresident who had not appeared, and who had not been served with personal process within the state. In the cases of Delta & Pine Land Co. v. Adams, and George County Bridge Co. v. Catlett, supra, the appeals were prosecuted by the taxpayers from the assessments, and the assessments had been sustained and made final. All questions were presented, and the taxpayers were in court prior to the assessment becoming final.

The case of Powell v. McKee, 81 Miss. 229, 32 So. 919, is not in point, because it was not a suit to recover a tax, but an injunction to restrain the collection of the tax by the taxing authorities. The remarks made in that case have no force as a decision, but are mere illustrations used by the court.

In so far as these cases hold that the statute gives a right of action against a nonresident who has not been served with process within the state, and, who has not appeared and contested the assessment prior to its becoming final, they are not authority for the position an-

nounced in the majority opinion, which announcement is in conflict with the decisions of the federal court, especially the case of Dewey v. Des Moines, 173 U. S. 193, 19 S. Ct. 379, 381, 43 L. Ed. 665. The decision in that case applied to an assessment made for betterment of property, which the statute of Iowa declared to be a personal liability against the owner of the property, just as section 3122, Code of 1930, undertakes to make the taxes there mentioned personal obligations. The court there said that: ''It is asserted in the petition that the defendant Dillworth, the treasurer of Holt county, is attempting to enforce the assessment levied by the common council, and that he claims plaintiff in error is personally liable for the taxes and interest, and will enforce payment thereof unless restrained, and that plaintiff's personal property is liable to be illegally seized for the payment of the tax. . . . In this case no question arises with regard to the validity of a personal judgment like the one herein against a resident of the state of Iowa, and we therefore express no opinion upon that subject. This plaintiff was at all times a nonresident of that state, and we think that a statute authorizing an assessment to be levied upon property for a local improvement, and imposing upon the lot owner, who is a nonresident of the state, a personal liability to pay such assessment, is a statute which the state has no power to enact, and which cannot, therefore, furnish any foundation for a personal claim against such nonresident. There is no course of reasoning as to the character of an assessment upon lots for a local improvement by which it can be shown that any jurisdiction to collect the assessment personally from a nonresident can exist. . . . A judgment without personal service against a nonresident is only good so far as it affects the property which is taken or brought under the control of the cou t or other tribunal in an ordinary action to enforce a personal liability, and no jurisdiction is thereby acquired

over the person of a nonresident further than respects the property so taken. This is as true in the case of an assessment against a nonresident of such a nature as this one as in the case of a more formal judgment. The jurisdiction to tax exists only in regard to persons and property, or upon the business done within the state, and such jurisdiction cannot be enlarged by reason of a statute which assumes to make a nonresident personally liable to pay a tax of the nature of the one in question. All subjects over which the sovereign power of the state extends are objects of taxation. Cooley, Tax'n (1 Ed.), pp. 3, 4; Burroughs, Tax'n, sec. 6.''

I can see no difference between a nonresident and a resident in the imposition of a personal liability for a betterment tax, and a personal liability for an ad valorem tax. The liability, to constitute a foundation for judicial action, must exist at the time the action is instituted, and cannot be created after the filing of a suit and during its progress.

The Supreme Court of the United States has elaborately and learnedly discussed the question of distinctions between creating a liability against a property situated within a state, and liability against nonresidents who have not been served with process in the state, and who have not appeared. There was no appearance before the taxing authorities, and no service of process within the state in the case at bar. Consequently, what was said in Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565, and Dewey v. Des Moines, supra, is applicable here. In the decision of Pennoyer v. Neff, at page 570 of 24 L. Ed., 95 U. S. 714, the court said: ''Substituted services by publication, or in any other authorized form, may be sufficient to inform parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act. The law assumes that property is always in the possession of its owner, in person or by agent; and it proceeds upon the

theory that its seizure will inform him, not only that it is taken into the custody of the court, but that he must look to any proceedings authorized by law upon such seizure for its condemnation and sale. Such service may also be sufficient in cases where the object of the action is to reach and dispose of property in the state, or of some interest therein, by enforcing a contract or a lien respecting the same, or to partition it among different owners; or, when the public is a party, to condemn and appropriate it for a public purpose. In other words, such service may answer in all actions which are substantially proceedings in rem. But where the entire object of the action is to determine the personal rights and obligations of the defendants, that is, where the suit is merely in personam, constructive service in this form upon a nonresident is ineffectual for any purpose.''

There are numerous cases referred to in this case, and they have been followed in many cases as will appear from the casenotes in 5 L. Ed. and in Rose's Notes. I will not elaborate upon them.

It follows that I believe that the judgment in the case at bar should be reversed and the bill dismissed entirely.

**Griffith, J.**, delivered a dissenting opinion.

In my opinion, this case does not present a proper occasion for the intervention of the attorney-general, and that upon the facts he was without legitimate power to institute and prosecute this suit. And such being my view, it follows that in my opinion the other questions dealt with are not before the court. I think the decree here should reverse and dismiss.

On Suggestion of Error.

**Smith, C. J.**, delivered the opinion of the court on suggestion of error.

The decree of the court below was affirmed in part on a former day, and the appellants suggest that we erred in so doing.

All of the questions presented by the suggestion of error were decided adversely to the appellants in our former opinion, to which we adhere, and only two of them will be again specifically discussed. The appellants assert: First, that the courts are without power to collect taxes through their judicial processes; and second, that a state is without power to impose a personal liability on nonresidents for taxes on property owned by them within the state.

The first of these assertions is too broadly stated, for, under all the authorities, taxes may be collected by judicial process, when, as here, so to do is authorized by the legislature. Section 3122, Code 1930.

The second assertion presents a more difficult question and seems to be in accord with numerous state court decisions, note of annotator to Greenbaum v. Commonwealth, Ann. Cas. 1913D, page 342, and to have the approval of Mr. Beale of the Harvard Law School, 32 Harvard Law Review, at page 587. The question, however, in the last analysis, is for the decision of the Supreme Court of the United States, and, according to that court, such liability can be imposed on a nonresident within the due process of law, which requirements are met if, before a nonresident comes under an obligation to pay the tax, he is given appropriate notice and an opportunity to contest it. Dewey v. Des Moines, 173 U. S. 193, 19 S. Ct. 379, 43 L. Ed. 665; Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 591, 44 L. Ed. 701. This was expressly held in the latter case wherein the court said: "Dewey v. Des Moines, 173 U. S. 193, 43 L. Ed. 665, 19 S. Ct. 379, cited by plaintiff in error, is not to the contrary. What was ruled there was that a citizen of one state cannot be cast in a personal judgment in another state on an assessment levied there on real estate for a local improvement, without service

on him, or voluntary appearance, or some action on his part amounting to consent to the jurisdiction.''

These cases were so interpreted in Collector of Taxes of Boston v. Rising Sun Street Lighting Company, 229 Mass. 498, 118 N. E. 871, and Greenbaum v. Commonwealth, 147 Ky. 450, 144 S. W. 45, Ann. Cas. 1913D, 338.

When the appellants appeared in the court below, they submitted themselves to the jurisdiction thereof, and, under the statute, had the right to contest the validity of the tax, including the assessed valuation of the property. This meets the requirements of due process. Bristol v. Washington County, supra.

Overruled.

**Ethridge, J.**, delivered a dissenting opinion on suggestion of error.

I adhere to my dissent rendered heretofore, and reported in 145 So. at page 634 et seq. In this case the proceeding in the chancery court was for both an attachment of the property and a personal judgment for the amount of taxes due thereon according to the assessment roll. The process was by publication to nonresidents, but the living defendants in the bill appeared and filed an answer, challenging the assessment, and denying personal liability. The property had been seized by the attachment proceedings, and the defendants gave a bond to have the attachment released, by which they bound themselves to pay whatever taxes the court should find to be due.

The giving of this bond, of course, subjected them to a personal liability, as they secured the benefit of having the property released from attachment. However, I cannot acquiesce in the doctrine that the original assessment constituted a personal liability against the defendants, enforceable by suit. There was no personal service upon any of the defendants in the assessment proceedings. And while there was a demand enforceable in the courts against the property itself, there was no liability

upon the owners of the property, who were nonresidents, and had not been brought before the assessing board, nor had they appealed or otherwise appeared in the assessment proceedings.

In my judgment, the case of Bristol v. Washington County, 177 U. S. 133, 20 S. Ct. 585, 44 L. Ed. 701, does not sustain personal-liability against a nonresident for taxes, and does not change the rule announced in Dewey v. Des Moines, 173 U. S. 193, 19 S. Ct. 379, 43 L. Ed. 665. In the Bristol case the property owner had localized his business, having a resident agent to transact business for him. After the death of the property owner administration proceedings were had to collect demands in favor of the estate, and to have liability against the estate adjudged, and the estate in Minnesota administered. The demand of Washington county for taxes was a liability against the property in Minnesota, and was taxable there. The administration in Minnesota had the same effect to give the court jurisdiction as though the deceased had been living, and had appeared and sought personally to transact business in court.

The case of Collector of Taxes of Boston v. Rising Sun Street Lighting Co., 229 Mass. 498, 118 N. E. 871, cited in the majority opinion is likewise a case where the defendant corporation had localized its business in Massachusetts, where its property was situated, and was there assessed. There is quite a difference between a citizen merely owning property in a foreign state, and being subject to a personal liability for taxes without service of personal process.

The case of Greenbaum et al. v. Commonwealth of Kentucky, 147 Ky. 450, 144 S. W. 45, Ann. Cas. 1913D, 338, is likewise distinguishable from Dewey v. Des Moines, supra. In its opinion in this case the Kentucky court said, on page 456 of 147 Ky., 144 S. W. 48, Ann. Cas. 1913D, 341: ''The cases relied upon by appellant rest upon the governing fact that a nonresident is not to be liable personally where he had not appeared in

any way in the initial proceedings taken to levy the assessment. Being a nonresident, and presumably ignorant of the steps taken by the foreign state, he has not had his day in court, and his liability is therefore limited to his property there taxed; but, where he takes part in the assessment, this presumption does not exist, and he stands in no better position than a resident.''

In that case the Kentucky court held that the defendant took part in the assessment of the property. In other words, that he was present during the assessment proceedings, and participated therein. The interpretation, however, placed by the Kentucky court upon the case of Dewey v. Des Moines is contrary to the weight of authority, and, in my view, contrary to the holding in that case.

In a case note to Greenbaum v. Commonwealth, Ann. Cas. 1913D, p. 342, it is said:

''Most of the decisions on the question of the personal liability of a nonresident for taxes on resident property hold contrary to the reported case and support the proposition that no action can be brought to enforce a personal liability for taxes against a nonresident. Dewey v. Des Moines, 173 U. S. 193, 19 S. Ct. 379, 43 L. Ed. 665; Rising v. Granger, 1 Mass. 47; Dewey v. Stratford, 42 N. H. 282; Cocheco Mfg. Co. v. Strafford, 51 N. H. 471 (dicta); Bowles v. Clough, 55 N. H. 389; Winchester v. Stockwell, 75 N. H. 322, 74 Atl. 249; New York, etc., R. Co. v. Lyon, 16 Barb. (N. Y.) 651; New York v. McLean, 57 App. Div. 601, 68 N. Y. Supp. 606, affirmed 170 N. Y. 374, 63 N. E. 380; New York v. Mason Au, etc., Confectionery Co., 64 Misc. 405, 119 N. Y. Supp. 472; Pendleton v. Com., 110 Va. 229, 65 S. E. 536; Berlin v. Grange, 5 U. C. C. P. 211. See also McLean v. Myers, 134 N. Y. 480, 32 N. E. 63; Cottle v. Cary, 61 App. Div. 66, 70 N. Y. Supp. 129, affirmed 73 App. Div. 54, 76 N. Y. Supp. 580; [Id.], 173 N. Y. 624, 66 N. E. 1106; State v. Hodges, 14 Rich. L. (S. C.) 256.''

I am, therefore, of opinion that the suggestion of error should be sustained.

### ON MOTION TO CORRECT JUDGMENT.

**Smith, C. J.**, delivered the opinion of the court on motion to correct judgment.

The appellants have filed a motion to correct the judgment rendered herein by this court on a former day. The error, if such there is, which they desire corrected, is in the calculation and statement in the court below of the amount due by the appellants as general county taxes. This error, if such it is, was made in the court below; and, if the appellants desired to complain thereof, they should have separately and particularly set it forth in their assignment of errors. Rule 6 of this court, 101 Miss., page 904. This they failed to do. The only paragraph in the assignment of errors that could in any way be said to have referred to the alleged error complained of is in this language: "The court erred in rendering and entering each and every part of the decree against the defendants and the surety on their bond." Such an assignment of error is insufficient for any purpose. It is too late now to here challenge the decree of the court below for an error not complained of when the case was under consideration by this court on its merits. By not having included it in their assignment of errors it was waived in so far as any complaint thereat is here concerned. Whether the error complained of, if such it is, can be corrected in the court below under section 755, Code 1930, is not before us, and we express no opinion thereon.

Overruled.