FIGHTING BAYOU DRAINAGE DIST. *v.* LEFLORE COUNTY *et al.*

(In Banc.  Nov. 22, 1937.  Suggestion of Error Overruled Jan. 3, 1938.)

[177 So. 6.  No. 32739.]

H. C. Mounger, of Greenwood, for appellant.

Nelson E. Taylor, of Greenwood, for appellant.

228

**Means Johnston**, of Greenwood, and **Berry D. Brown**, of Sidon, for appellees.

230

Smith, C. J., delivered the opinion of the court.

The appellant is a drainage district in which lies section 16, township 22, range 2 west. The drainage taxes on the land for the years 1928 to 1933, inclusive, have not been paid, and the appellant sought in the court below to recover these taxes either from the county or from Manning to whom the county had attempted to lease the land for those years. The amount of the drainage taxes for those years is set forth, and there is no controversy relative thereto.

A number of interesting questions are presented in the briefs of counsel, but the conclusion we have reached as to one which lies at the threshold of the case will render it unnecessary for us to consider most of them.

Chapter 267, Laws 1924, provides that sixteenth sections lying within a drainage district ''shall be liable for its pro rata share of the costs, expenses, taxes and assessments relating to said district the same as if owned by an individual, and shall be assessed accordingly, as other lands are assessed. But in case of a sale of such lands for such taxes or assessments, only the title of the

lessee holding such lands under lease at the time of the sale shall pass by the sale.

"Where such sixteenth section land, or land taken in lieu thereof, shall be held by any lessee, whether his lease shall have heretofore been acquired, or shall hereafter be acquired, all such drainage taxes and assessments accruing thereon during such lease, shall be paid by the lessee or his grantees or assigns; but all such drainage taxes and assessments accruing on any such lands while the same are not leased shall be paid by the board of supervisors of the county in which such lands are situated, out of any sixteenth section funds belonging to the township in which such lands are located, which may be on hand at the time when such drainage taxes or assessments become due or which may be thereafter at any time collected or acquired. And for the purpose of paying such drainage taxes and assessments, the board of supervisors may borrow all money necessary to pay the same out of any public funds in the hands of the county treasury, or the same may be borrowed from any other person or corporation at a rate of interest not to exceed six (6) per cent per annum. But when any such funds are borrowed, as aforesaid, for the purposes, aforesaid, the same shall be repaid out of the first sixteenth section fund thereafter derived from the sixteenth section lands so taxed and assessed." Sections 1, 2.

In 1926, the county superintendent of education leased the land, which is not situated in a city, town, or village, to Manning for the years 1927 to 1931, inclusive, and Manning went into possession thereof; but no order was entered on the minutes of the board of supervisors directing or approving this lease, consequently, it did not become effective as such under section 6769, Code 1930. It is not necessary for us to determine what rights Manning had thereunder, except to say that at most, if that, he became only a tenant of the land at will. City of Bay St. Louis v. Board of Supervisors Hancock Coun-

ty, 80 Miss. 364, 32 So. 54. This is not the character of tenancy contemplated by the statute, and it does not shift liability for the payment of drainage taxes from the county to the tenant. The statute contemplates a lease for a definite period of time covering that at which liability for the drainage taxes arises.

Counsel for the appellees say that this suit cannot be maintained under section 253, Code 1930, as amended by chapter 179, Laws 1932, for the reason that the appellant's claim for the taxes was not presented to and rejected by the board of supervisors. But there is no merit in this contention; for the bill of complaint alleges the presentation to, and the rejection by, the board of supervisors of the appellant's claim for the taxes, which allegation the answers to the bill do not deny.

In 1932 the land was verbally leased by the county superintendent to Manning for that year, and the same course was pursued for the two succeeding years. These leases do not relieve the county of liability here for two reasons: (1) Leases for sixteenth section lands, though only for one year, cannot rest in parol; the terms thereof must appear from an order on the minutes of the board of supervisors directing or approving the lease, section 6769, Code 1930; and (2) section 6767, Code 1930, under which the last three leases were made, differs from chapter 267, Laws 1924, in this, in the latter, the payment of the drainage taxes on sixteenth sections is imposed on the lessee thereof; in the former, such taxes "shall in the discretion of the board of supervisors, either be paid by the lessee, his grantees or assigns, or by the board of supervisors, but the liability for such drainage taxes shall be fixed by the lease contract when said lands are leased." According to the evidence, the payment of the drainage taxes thereon was not discussed at the time these leases were made nor referred to in the oral contract of lease therefor; consequently, liability therefor remains with the board of supervisors.

The drainage tax for the year 1934 was not due when

the bill of complaint was filed, but it prays for an adjudication as to whether the board or Manning is liable therefor. To respond to this would be to give an advisory opinion, which this court does not do; but, of course, the information requested is easily ascertainable from what we have hereinbefore said.

The record discloses that the income obtained by the county from this sixteenth section for each of the years here involved has been spent for school purposes. This fact is of no consequence; for, under section 6767, Code 1930, drainage taxes may be paid "out of any sixteenth section funds belonging to the township in which such lands are located, which may be on hand at the time when such drainage taxes or assessments become due or which may be thereafter at any time collected or acquired."

The decree of the court below will be reversed, and decree will be rendered here for the appellant against the county for the payment of the taxes for the years 1928 to 1933, inclusive, out of any sixteenth section funds belonging to township 22, range 2 west, which may be now on hand, or which may be hereafter collected or acquired.

Reversed, and decree here.

**Ethridge, J.**, delivered an opinion, partly concurring and partly dissenting.

I concur in the holding that the judgment of the court below should be reversed, and also that there is personal liability upon the lessee under section 2 of chapter 267, Laws 1924; but I dissent from the holding that the county is liable, and also from the construction placed upon section 6767, Code 1930.

The bill alleges that there was a lease contract entered into between the superintendent of education and the defendant, Manning, and that this contract was approved by the board of supervisors in fact, but they failed to enter it upon their minutes. Both the super-

visors and the defendant, Manning, admit the execution of this contract, and that it was actually approved by the board of supervisors, but through some oversight it was not entered upon the minutes at the time that the contract in writing was signed by the superintendent of education and the defendant Manning; and they admit that Manning went into possession under the said lease, and actually used and worked the land during all the period covered, and had paid rents to the superintendent of education in full for the first three years, and in part for two other years covered by the written lease; and that for the years 1932 and 1933 there was an oral lease for a year in each instance, and that this lease was approved by the board of supervisors, but not entered upon the minutes, and only evidenced by the note taken for the lease money. The amount of the lease so agreed to was paid to the superintendent of education, and by him paid into the county depository to the credit of township funds where the section is situated.

There can be no question whatever, in my opinion, about the right of Manning to have had the approval entered on the minutes by mandamus or other coercive proceeding at any time after it was actually approved by the board of supervisors. There is no doubt, furthermore, in my opinion, that the drainage district could also have coerced the board of supervisors into placing the approval of the contract upon the minutes, since it was a beneficiary of such lease. The board of supervisors clearly had jurisdiction of the subject-matter, and actually approved the lease, so far as bringing to bear its judgment and discretion upon the matter is concerned; and the only thing unperformed by the board was the ministerial duty of entering the approval upon the minutes. This being true, and it being the legal duty of the board of supervisors to enter such approval on the minutes, and this duty being coercible by legal proceedings, it comes within the principle that equity will consider that as being done which should be done; and this suit

being in equity, and equity not being required to compel resort to legal proceedings to confirm the rights agreed upon in the lease, but having the power to act as though it had actually been done, a judgment should have been rendered against Manning for the taxes due the drainage district. This obligation is imposed upon Manning as a personal obligation, under section 2, chapter 267, Laws 1924.

In construing the statute, we must bear in mind the subject-matter dealt with, and the provisions of section 211 of the Constitution, prohibiting the sale of sixteenth section lands. The language of the statute is: ''Where such sixteenth section land, or land taken in lieu thereof, shall be held by any lessee, whether his lease shall have heretofore been acquired, or shall hereafter be acquired, all such drainage taxes, and assessments accruing thereon during such lease, shall be paid by the lessee or his grantees or assigns.'' It will be noted that the legal duty to pay or to charge is upon the lessee, and not upon the leasehold interest. It is quite possible that a lease might be made of sixteenth section land from year to year, or twelve months at a time; and the lease would expire before the leasehold interest could be sold under tax collector's proceedings of distress, and the fee could not be sold; consequently, to make the taxes collectible, it was designed to impose a personal obligation upon the lessee to pay them. This is distinguished from the decision in the case of Nickey v. State ex rel., 167 Miss. 650, 145 So. 630, 146 So. 859, 147 So. 324, which construed another statute differing in language and purpose from the present statute.

The doctrine that equity regards that as done which should be done is one of the fundamental equitable principles which treats legal requirements which may be coerced in judicial proceedings as having been complied with, without waiting for the circuitous action of courts. The doctrine also applies to certain duties and principles of an equitable nature not strictly coercible at law. In

21 C. J., 200, section 190, it states: ''The maxim that equity regards as done that which ought to be done has been said to be equity's favorite maxim. The principle of it is the basis for many forms of equitable relief, and it has been said to be the foundation of all distinctively equitable property rights, estates and interests. It has no application in actions at law. The broad meaning of this maxim is that where an obligation rests upon a person to perform an act equity will treat the person in whose favor the act should be performed as clothed with the same interest and entitled to the same rights as if the act were actually performed.'' See, also, 10 R. C. L. 383, section 133; Mississippi Digest, title Equity Key No. 57; Decennial Digests, title Equity Key No. 57.

It seems to me, therefore, that the fact that the lease was not formally entered on the minutes at the time of its execution is not a bar to charging Manning under the lease. So far as he is concerned, he had all the benefit of the contract, occupied and used the land, and could not be heard to say, and he has not attempted to say, that he is not liable therefor, but, on the contrary, specifically admits that he is liable therefor.

But the lease was approved by an order entered at the April term, 1931, at the instance of the superintendent of education, setting forth the lease and the lease agreement, together with the taxes for the several years, and directing and permitting the superintendent of education to pay them out of the rents of the year 1930. In this order, entered upon the minutes at the April term, 1931, it was recited: ''It appearing further that on December 22nd, 1926, said superintendent of education entered into a valid written contract leasing said section to one G. W. Manning for five consecutive years beginning with the year 1927, and that said lease provided as follows (quoting from the lease). And that said Manning has paid under said lease for each of said three years rent in the sum of $4,000.00 in cash but that no part has been paid out of said taxes, but that all of

said taxes are lawfully due," etc. It was not necessary to spread the contract in full on the minutes, but any order showing approval of the written contract will suffice.

This is a solemn recognition of the existence and legality of the contract which would perfect it, and the contract itself, so approved, would relate back to the beginning of the lease term.

The majority opinion, in its holding that Manning was only a tenant at will, cites Bay St. Louis v. Hancock County, 80 Miss. 364, 32 So. 54. In my opinion, that contract decision has no binding authority here for the reason that the contract there treated of was one which the board of supervisors had no authority to make at all. Here the board had full authority to deal with the subject-matter required of it, and the contract was fully performed by both parties, with the exception of part of the money for the lease for the last two years of the five-year period. A contract, although it may require writing for its enforcement prospectively, is cured and valid when it is performed, and even part performance gives equity jurisdiction to administer relief so as to do justice between the parties. See Lawrence on Equity Jurisprudence, sections 58, 136 and 781.

I differ with the majority opinion as to the construction of section 6767, Code 1930, amending the statute, chapter 267, Laws 1924. The language of the statute, so far as it applies here, reads: "Where such sixteenth section land, or land taken in lieu thereof, shall be held by any lessee, whether his lease shall have heretofore been acquired, or shall hereafter be acquired, all such drainage taxes and assessments accruing thereon during such lease shall in the discretion of the board of supervisors, either be paid by the lessee, his grantees or assigns, or by the board of supervisors, but the liability for such drainage taxes shall be fixed by the lease contract when said lands are leased."

This statute only changed chapter 267 to the extent

of giving the board of supervisors discretion to obligate the board, in making a lease, to pay the taxes, when such agreement would redound to the interest of the township or the drainage district, as against the lessee. If this obligation should have been fixed in the contract, but was not fixed, in the absence of such an agreement the duty remained where it had formerly been placed, with the lessee or occupant of the land, who was getting and enjoying the usufruct of the land.

The statute here being construed is an attempt to divert the sixteenth section funds from school purposes, and for the benefit of the whole township, to the drainage district and the bondholders of such district. The state of Georgia, in donating these lands, or granting them to the government, granted them in trust for educational purposes, and it is questionable, from the constitutional standpoint, whether that can be legally done. But that question is not presented here, and I do not discuss it. It appears to indicate that there might be such construction of the statute as would save it from questionable constitutionality, where that can be reasonably done.

I think, furthermore, that judgment should have been rendered against Manning, the lessee, regardless of whether the lease was technically valid or not. Under sections 6000, 6001, 6002, and 6004, which sections give public bodies, like the state and its subdivisions, rights of action in all cases where a private person would have the right of action, under similar circumstances. Section 6000 provides that: "If any person shall unlawfully enter on, and intrude upon or hold land belonging to the state, or take possession of or hold any personal property belonging to the state, such person may be proceeded against by action to be instituted by the district attorney of the district, or by the escheator of the county in a proper case; and on the trial of the issue, the court or jury shall assess damages for rents and profits, and for injury done to the property by the despoilment of the

timber or otherwise; and if the trespass complained of be the cutting, belting, girdling, boxing, or otherwise injuring the timber, triple damages shall be recovered.''

In like manner, section 6001 gives a right of action in all cases where property, real or personal, has accrued to the state by forfeiture or otherwise; and 6002 provides that the state shall be entitled to bring all actions and all remedies to which individuals are entitled in a given state of case. It is too clear for dispute that an individual in the case before us could recover any obligation flowing from the lease, from Manning, and could compel the performance of any obligation flowing therefrom, in a court of equity; or could recover damages in a court of law. Section 6004 provides that any county may have like remedies given to recover any property belonging to it, or damages for injuries thereto; and that action may be brought in behalf of the county either by a district attorney or some one employed therefor by the board of supervisors.

The drainage district is given by law the power to sue and be sued, and has by this gained the right to bring a suit in equity without joining the usee party.

It is argued by the appellee that if there is a personal obligation, it would have to be sued for by the tax collector; but this suit is in a court of equity, which has a right at the suit of any party entitled to sue, to protect his rights and give judgment in accordance with equity, regardless of any usee party, or any party who might be given the power to sue on behalf of the drainage district. Equity looks to the substance and not to the form in such cases, and loves to do justice, not by halves, but by entirety.

I am of the opinion, further, that if by default of the board of supervisors in not entering the contract on the minutes, Manning should escape liability, or if he should become insolvent, so that money could not be realized on judgment, the members of the board of supervisors would in such case be personally liable, but the

liability would not run against the township represented by the superintendent and the board of supervisors, who in this case are mere agents of the drainage district and the township for the purpose of leasing the lands.